UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HAITIAN BRIDGE ALLIANCE, AFRICAN COMMUNITIES TOGETHER, and UNDOCUBLACK NETWORK,

Plaintiffs,

-v-

U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, and FEDERAL BUREAU OF PRISONS,

Defendants.

22 Civ. 8344 (ER)

---

**DEFENDANTS U.S. DEPARTMENT OF HOMELAND SECURITY,
U.S. CUSTOMS AND BORDER PROTECTION, AND
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2741/2721
Fax: (212) 637-2686
Email: dana.walsh.kumar@usdoj.gov
          tomoko.onozawa@usdoj.gov

DANA WALSH KUMAR
TOMOKO ONOZAWA
Assistant United States Attorneys,
    *Of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ...............................................................................................................................2

    A.    Plaintiffs' FOIA Requests.......................................................................................2

        1.    October 2021 Request............................................................................2

        2.    February 2022 Request .........................................................................4

        3.    This Litigation and the May 2 Proposal......................................................5

        4.    Plaintiffs' Response to the May 2 Proposal.................................................8

ARGUMENT ...................................................................................................................................10

    A.    The Court Should Limit the October 2021 Request to the May 2 Proposal, as Modified, and Reject Plaintiffs' Proposed Request Nos. 6 and 7 .....................12

        1.    Plaintiffs' Proposed Request No. 6 .........................................................14

        2.    Plaintiffs' Proposed Request No. 7.........................................................17

    B.    The Court Should Allow the DHS Defendants to Exercise Their Discretion to Craft Reasonable Searches for Responsive Email Communications............................18

CONCLUSION................................................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

Cases

*Agility Pub. Warehousing Co. K.S.C. v. Nat'l Sec. Agency*,
  113 F. Supp. 3d 313 (D.D.C. 2015) .................................................................................. 18, 19

*American Center for Law and Justice v. U.S. Department of Homeland Security*,
  573 F. Supp. 3d 78 (D.D.C. 2021) ................................................................................... 14, 16

*Amnesty Int'l USA v. CIA*,
  No. 07 Civ. 5435 (LAP), 2008 WL 2519908 (S.D.N.Y. June 19, 2008) ................................ 11

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .............................................................................................................. 10

*Bigwood v. DOD*,
  132 F. Supp. 3d 124 (D.D.C. 2015) ....................................................................................... 18

*Carney v. U.S. Dep't of Justice*,
  19 F.3d 807 (2d Cir. 1994) ..................................................................................................... 11

*Clevenger v. DOJ*,
  No. 18 Civ. 1568 (LB), 2020 WL 1846565 (E.D.N.Y. Apr. 3, 2020) ............................... 12, 18

*Ctr. for Immigr. Stud. v. USCIS*,
  628 F. Supp. 3d 266 (D.D.C. 2022) ............................................................................. 12, 13, 17

*Dale v. I.R.S.*,
  238 F. Supp. 2d 99 (D.D.C. 2002) ............................................................................... 12, 13, 18

*Dent v. Holder*,
  627 F.3d 365 (9th Cir. 2010) .................................................................................................. 16

*Doyle v. U.S. Dep't of Homeland Sec.*,
  331 F. Supp. 3d 27 (S.D.N.Y. 2018) ...................................................................................... 19

*Freedom Watch, Inc. v. CIA*,
  895 F. Supp. 2d 221 (D.D.C. 2012) ....................................................................................... 12

*Grand Cent. P'ship, Inc. v. Cuomo*,
  166 F.3d 473 (2d Cir. 1999) ................................................................................................... 10

*Informed Consent Action Network v. FDA*,
  No. 20 Civ. 689 (AJN), 2022 WL 902083 (S.D.N.Y. Mar. 28, 2022) .................................... 12

*McKinley v. FDIC*,
   807 F. Supp. 2d 1 (D.D.C. 2011) ............................................................. 16

*NAACP Legal Def. & Educ. Fund, Inc. v. DOJ.*,
   463 F. Supp. 3d 474 (S.D.N.Y. 2020) ....................................................... 18

*Nat'l Sec. Counselors v. CIA*,
   969 F.3d 406 (D.C. Cir. 2020) ................................................................. 12

*New York Times Co. v. U.S. Dep't of Justice*,
   872 F. Supp. 2d 309 (S.D.N.Y. 2012) ....................................................... 10

*Rein v. U.S. Patent & Trademark Office*,
   553 F.3d 353 (4th Cir. 2009) ................................................................... 17

*SAI v. Transportation Sec. Admin.*,
   315 F. Supp. 3d 218 (D.D.C. 2018) .......................................................... 19

*Scotto v. Almenas*,
   143 F.3d 105 (2d Cir. 1998) ................................................................... 11

*Seife v. U.S. Department of State*,
   298 F. Supp. 3d 592 (S.D.N.Y. 2018) ....................................................... 12

*Smolen v. Federal Aviation Administration*,
   No 22 Civ. 44 (LJL), 2023 WL 3818105 (S.D.N.Y. June 2, 2023) .......................... 17

*Yagman v. Pompeo*,
   868 F.3d 1075 (9th Cir. 2017) ....................................................... 12, 13, 17

*Yeager v. Drug Enf't Admin.*,
   678 F.2d 315 (D.C. Cir. 1982) ......................................................... 5, 6, 12

Statutes

5 U.S.C. § 552(a)(3) ............................................................................. 5, 11

6 C.F.R. § 5.3(b) ............................................................................... 12, 17

Fed. R. Civ. P. 56 ............................................................................. *passim*

Defendants the U.S. Department of Homeland Security ("DHS-HQ"), U.S. Customs and Border Protection ("CBP"), and U.S. Immigration and Customs Enforcement ("ICE") (collectively, the "DHS Defendants" or the "Government"), by their attorney, Damian Williams, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

In October 2021, Plaintiffs submitted to each of the DHS Defendants an improper FOIA request regarding DHS operations in the Del Rio sector in September 2021 (the "October 2021 Request"). Request Nos. 1 and 2 of the October 2021 Request were vast—encompassing over 52 numbered subparts—and failed to reasonably describe the records, or categories of records, Plaintiffs sought. In February 2022, Plaintiffs submitted a second FOIA request to DHS-HQ and CBP seeking a more defined set of records (the "February 2022 Request"). Over the nine months since Plaintiffs filed this lawsuit, the DHS Defendants have communicated with Plaintiffs on many occasions in an attempt to clarify and narrow the scope of the vague and overbroad portions of the October 2021 Request in a manner that would allow the agencies to search for and locate potentially responsive records with reasonable effort. This culminated in the DHS Defendants sending Plaintiffs a comprehensive proposal on May 2, 2023 (the "May 2 Proposal") with a proposed reformulation of Request Nos. 1 and 2 of Plaintiffs' October 2021 request in a manner that reasonably described the categories of records for which the DHS Defendants would search. Plaintiffs have agreed to most of the May 2 Proposal, but the parties have reached an impasse on two issues, which are the basis of this motion for partial summary judgment.

First, Plaintiffs have added to the May 2 Proposal two sets of requests that, like Request Nos. 1 and 2 of the original October 2021 Request, do not reasonably describe the records

requested and/or are duplicative and improper "catch-all" requests.  The Court should reject these additional requests.

Second, as part of the May 2 Proposal, the DHS Defendants agreed to conduct searches of the e-mail communications and attachments of selected custodians using certain search terms. While Plaintiffs have agreed to the custodians, they have refused to accept the DHS Defendants' proposed search terms, insisting that the DHS Defendants instead use their preferred search terms, which are unreasonably broad.  The Court should reject this effort and allow the DHS Defendants to exercise their discretion to devise search terms that are reasonably calculated to identify responsive documents, as is permitted by FOIA.

For these reasons, this Court should grant partial summary judgment to the DHS Defendants limiting the DHS Defendants' responses to Plaintiffs' FOIA requests to what is contained in the May 2 Proposal, with certain modifications to which the DHS Defendants have since agreed.

## BACKGROUND

**B.    Plaintiffs' FOIA Requests**

### 1.    October 2021 Request

On October 1, 2021, Plaintiffs sent a FOIA request (the "October 2021 Request") to defendants DHS-HQ, CBP, ICE, the Federal Bureau of Prisons ("BOP"),[1] and 12 other federal agencies, seeking a wide range of records concerning the Government's treatment of at least 15,000 migrants who had crossed the Mexican border and arrived in Del Rio, Texas, in September

---

[1] As of April 12, 2023, defendant BOP had completed its searches for responsive records and produced all non-exempt portions of responsive records to Plaintiffs in four separate productions. BOP believes it has satisfied its obligations under FOIA, and will separately move for summary judgment on a later date should Plaintiffs seek to challenge any aspect of its searches and withholdings.

2021.  *See* Declaration of Fernando Pineiro ("Pineiro Decl.") Ex. A; Declaration of Catrina Pavlik-Keenan ("Pavlik-Keenan Decl.") Ex. A; Declaration of Patrick Howard ("Howard Decl.") Ex. A. Request No. 1 contained 37 subparts, Request No. 2 contained 15 subparts, and Request No. 3 contained 20 subparts, for a total of 72 numbered requests.  *Id.*  On January 28, 2022, DHS-HQ informed Plaintiffs that the October 2021 Request was "too broad in scope or did not specifically identify the records which [Plaintiffs] are seeking," and asked Plaintiffs to resubmit the October 2021 Request with "a reasonable description of the records [they] are seeking" (Pavlik-Keenan Decl. Ex. B), but Plaintiffs refused.  CBP and ICE acknowledged receipt of the October 2021 Request, but did not otherwise respond at the administrative level.  Compl. ¶¶ 46, 49–51, 55.

Request Nos. 1 and 2 of the October 2021 Request seek all records encompassing virtually every facet of the DHS Defendants' operational mission in the Del Rio sector during the relevant period.  For example, Request No. 1 seeks "[a]ll Records . . . whether formal or informal, created since September 1, 2021, including all revisions of such Records, related to or reflecting" "plans for responding to the arrival or presence of migrants"; "[a]ctions taken by the Agency or Agency personnel in response to the arrival or presence of migrants"; "[t]he processing of arriving migrants"; "actions or efforts to create and maintain records with respect to migrants"; "actions or efforts to ensure that the processing of migrants . . . complies with the Agency's legal duties under applicable statutes, regulations, and court orders"; the provision of temporary housing, medical care, food, water, and clothing to migrants; the scheduling of "resources and personnel from the Agency, other federal or state agencies, or private companies" to provide housing, medical care, food and water; and all "actions or efforts to determine whether migrants should be placed in removal proceedings."  Pineiro Decl. Ex. A, at 8–13.  Request No. 2 seeks "[a]ll records, whether formal or informal, created since September 1, 2021, including all revisions of such Records,

related to or reflecting correspondence and communications" relating to "plans for responding to, and actions taken by the Agency or Agency personnel in response to, the arrival or presence of migrants," and communications and correspondence with the State of Texas, the Government of Mexico, "any federal or state agency, contractor, or private company," the Republic of Haiti, unnamed "partners in the hemisphere," and unnamed "senior-level personnel" at the State Department. *Id.* at 13-16.

Request No. 3 of the October 2021 Request seeks "[a]ll Records, including data in any database," relating to twenty categories documents concerning "[t]he number of migrants" in the Del Rio Sector, "[t]he number of flights operating by ICE Air Operations," "[t]he number of use of force complaints," and "[t]he number of civil rights complaints." *Id.* at 16–18. CBP has completed processing Request No. 3 of the October 2021 Request, Howard Decl. ¶ 19–20, and ICE has agreed to process this request, which is not at issue in this motion. Pineiro Decl. ¶ 23.

## 2. February 2022 Request

On February 25, 2022, Plaintiffs sent a second FOIA request (the "February 2022 Request") to DHS-HQ and CBP, seeking records concerning any investigations related to the treatment of individuals in the Del Rio sector in September 2021. *See* Pineiro Decl. Ex. B. DHS-HQ and CBP acknowledged receipt of the February 2022 Request, Pavlik-Keenan Decl. ¶ 22, Howard Decl. ¶ 15, but did not engage in further communications with Plaintiffs regarding that request at the administrative level. CBP and DHS-HQ are currently processing the February 2022 Request, Howard Decl. ¶ 20, Pavlik-Keenan Decl. ¶ 23, and DHS-HQ, at Plaintiffs' request,

referred the February 2022 Request to ICE for processing in May 2023.  Pavlik-Keenan Decl. ¶ 23;

Pineiro Decl. ¶ 19.  The February 2022 Request is not at issue in this motion.

### 3.     This Litigation and the May 2 Proposal

Plaintiffs filed the instant suit on September 30, 2022, against the DHS Defendants and

BOP, to compel disclosure of the records requested in the October 2021 and February 2022 FOIA

Requests.

After reviewing the Complaint, the DHS Defendants, through their counsel, notified

Plaintiffs that they were unable to process Request Nos. 1 and 2 of the October 2021 Request.  The

DHS Defendants informed Plaintiffs that, as written, these requests did not "reasonably describe"

the records sought as required under 5 U.S.C. § 552(a)(3); *Yeager v. Drug Enf't Admin.*, 678 F.2d

315, 326 (D.C. Cir. 1982) ("The linchpin inquiry is whether the agency is able to determine

precisely what records (are) being requested.") (internal quotation marks omitted).

The parties then engaged in months of negotiations, including participating in multiple

telephone calls and exchanging letters regarding the scope of the requests and the DHS

Defendants' ability to conduct searches and process the requests.  Throughout these discussions,

the Government attempted to ascertain from Plaintiffs a reasonable description of the categories

of documents Plaintiffs were requesting in Request Nos. 1 and 2 of the October 2021 Request

because, as drafted, these requests could include virtually every document relating to operations

and/or migrants present in the Del Rio sector in September 2021.  After Plaintiffs' repeated failure

to reasonably describe the records they were seeking in those requests, the Government sent

Plaintiffs a proposal on May 2, 2023 that reformulated Request Nos. 1 and 2 in such a way that

described particular categories of documents and would permit the DHS Defendants to conduct

searches for those categories of documents with reasonable effort.  *See* Pineiro Decl. ¶ 25 and Ex. C; Pavlik-Keenan Decl. ¶ 24; Howard Decl. ¶ 21.

For example, in Section A.1 of the May 2 Proposal, CBP and ICE agreed to search for "Policies, procedures, directives, and formal guidance issued or created by CBP and/or ICE in effect and as applicable to migrants in Del Rio between September 1, 2021, and September 25, 2021, regarding" thirteen categories relating to governmental actions directed towards migrants in the Del Rio sector in September 2021.  Pineiro Decl. Ex. C, at 1–2.  Pursuant to Section A.2, CBP, ICE and, as applicable, DHS-HQ, [2] have agreed to search for "Formal reports or memoranda . . . documenting" six types of events or circumstances relating to governmental action in the Del Rio Sector in September 2021.  *Id.* at 2–3.  Under Sections A.3 and A.4, all three DHS Defendants have agreed to search for reports, memoranda, or formal complaints relating to events in the Del Rio Sector in September 2021.  *Id.* at 3–4.  And finally, CBP and ICE have agreed to search for records responsive to Section A.5 of the May 2 Proposal, and all three DHS Defendants have agreed to search for records responsive to Section A.6 of the May 2 Proposal, both of which seek certain data relating to events in the Del Rio Sector from September 2021.  *Id.* at 4.  Sections A.1 through A.6 of the May 2 Proposal represent the DHS Defendants' best, good faith effort to

---

[2] The May 2 Proposal proposed that only CBP and ICE would conduct the searches set forth in Sections A.1 through A.6, *see* Pineiro Decl. Ex. C; ECF No. 45.  Plaintiffs, however, demanded that DHS-HQ search for records responsive to Sections A.2(a)-(d), A.2(f), A.3, A.4 and their proposed version of A.6, which DHS-HQ initially objected to.  *Id.* Ex. D, at 2–5.  DHS-HQ has since withdrawn that prior objection, and has agreed to conduct searches for records responsive to Sections A.2(a)-(d), A.2(f), A.3, A.4 and A.6, as set forth in the DHS Defendants' May 2 Proposal.  Pavlik-Keenan Decl. ¶ 31.

reformulate Request Nos. 1 and 2 in the October 2021 Request in such a way that reasonably describe the records that they believe that Plaintiffs are requesting.

Section B of the May 2 Proposal restates Plaintiffs' original Request No. 3 from the October 2021 Request, *id.* Ex. A, at 16–18; Ex. C, at 4–6, which CBP and ICE have agreed to process as originally drafted.  Howard Decl. ¶ 20; Pineiro Decl. ¶ 23.  As noted above, CBP has completed its processing of this request and has produced any non-exempt, responsive material that it identified.  Howard Decl. ¶ 20.  ICE is currently processing this request.

Section C of the May 2 Proposal restates the February 2022 Request in its entirety.  *See* Pineiro Decl. Ex. B, at 4; Ex. C, at 6–7.  As noted above, CBP and DHS-HQ have agreed to search for, process, and produce non-exempt portions of records responsive to the February 2022 Request, and DHS-HQ has also referred the February 2022 Request to ICE.

Pursuant to Section D of the May 2 Proposal, the DHS Defendants agreed to search for email communications relating to the "the DHS Defendants' policies, directives, and actions relating to the treatment, processing, and removal of migrants in the Del Rio Sector" in September 2021 for fourteen listed custodians.  *Id.* Ex. C, at 7–8.  The DHS Defendants had engaged in discussions with Plaintiffs regarding potential search terms, but the search terms proposed by Plaintiffs were overbroad and yielded an extremely high number of hits, and the parties could not agree on search terms.  Accordingly, the DHS Defendants advised Plaintiffs in the May 2 Proposal that they intend to exercise their discretion to conduct reasonable searches for potentially responsive email communications.  *Id.* at 7–8.

### 4.       Plaintiffs' Response to the May 2 Proposal

Plaintiffs accepted much of the May 2 Proposal, including Sections A through C.   In response to Section A, however, Plaintiffs proposed additions to Request No. 6 demanding that the agencies also search for "Records reflecting the following data":

a.       total number of requests made by Migrants in Del Rio between September 1, 2021, and September 25, 2021, for each of the following: food; water; housing or shelter; medical treatment (including COVID-19 vaccinations and testing); sanitation facilities; hygiene products; diapers; baby food and formula; and clothing, and documents sufficient to show how the Agency processed and resolved any request for the same.

b.       how much the Agency provided of and how many times the Agency provided each of the following: food; water; housing or shelter; medical care (including COVID-19 vaccinations and testing); sanitation facilities; hygiene products; diapers; baby food and formula; clothing; and medical treatment to Migrants in Del Rio between September 1, 2021, and September 25, 2021."

c.       how the Agency tracked and addressed deaths of Migrants; drownings of Migrants; pregnancies of Migrants; Migrants going into labor or giving birth; and hospitalizations of Migrants in Del Rio between September 1, 2021, and September 25, 2021.

d.       the numbers of Migrants in Del Rio between September 1, 2021, and September 25, 2021, who died, drowned, were pregnant, went into labor, gave birth, or were hospitalized.

e.       between September 1, 2021, and September 25, 2021, the types of documents collected from or returned to Migrants in Del Rio, given to Migrants in Del Rio (e.g., colored paper tickets), and created during processing of Migrants in Del Rio.

f.       the age, immigration history (if any) expressed fear of return (if applicable), medical condition, and familial relationships of Migrants in Del Rio between September 1, 2021, and September 25, 2021, and Records sufficient to show how the Agency tracked the same.

g.       the race, country of origin or domicile, age, immigration history (if any), expressed fear of return (if applicable), medical condition, and familial relationships of each member of a family unit with a baby born in Del Rio between September 1, 2021 and September 25, 2021 that was expelled, removed, or deported.

*See* Pineiro Decl. Ex. D, at 4–5 ("Plaintiffs' Request No. 6").

In an effort to provide the information which Plaintiffs are seeking and which the DHS Defendants believe they may have, the May 2 Proposal accepted the substance of Plaintiffs' Request Nos. 6(a) and 6(d) with some modifications:

    a.    The total volumes or quantities of food; water; housing or shelter; medical care (including COVID-19 vaccinations and testing); sanitation facilities; hygiene products; diapers; baby food and formula; and clothing.

    b.    The total numbers of deaths of migrants; drownings of migrants; pregnancies of migrants; migrants going into labor or giving birth; and hospitalizations of migrants in Del Rio between September 1, 2021, and September 25, 2021.

*See* Pineiro Decl. Ex. C, at 4 ("DHS Defendants' Request No. 6"). The DHS Defendants rejected the remainder of Plaintiffs' Request No. 6 because, like Request Nos. 1 and 2 of the original October 2021 Request, it fails to reasonably describe the records sought. Pineiro Decl. ¶ 28; Pavlik-Keenan Decl. ¶ 27; Howard Decl. ¶ 30.

Plaintiffs' added Request No. 7 also demanded that the DHS Defendants conduct additional searches for "Records reflecting the following information, to the extent not captured in the preceding sections Nos. 1–6:"

    a.    if, when, and how the amount or speed of water flowing through the Rio Grande River within the Del Rio Sector changed between September 1, 2021 and September 25, 2021

    b.    if, when, and how horse patrols, use of force techniques, crowd management techniques, crowd control techniques, restraints, motorcycles, whips, ropes, reins, aircraft, vehicles, and weapons were used in Del Rio between September 1, 2021 and September 25, 2021.

    c.    if, when, and how Migrants in Del Rio between September 1, 2021 and September 25, 2021 were threatened, had violence used against them, were intimidated, were harassed, were discriminated against, or were deterred from arriving in Del Rio.

    d.    how the Agency determined whether and under what legal authority (e.g., Title 8, Title 42 Order) Migrants in Del Rio between September 1, 2021 and

September 25, 2021 should be arrested, removed, detained, deported, or expelled.

e.  how the Agency determined to which country deported or expelled Migrants in Del Rio between September 1, 2021 and September 25, 2021 should be sent.

f.  how the Agency determined whether Migrants in Del Rio between September 1, 2021 and September 25, 2021 who were placed in Title 8 removal processing should be detained, paroled, or released on their own recognizance pending removal.

g.  how the Agency processed Migrants in Del Rio between September 1, 2021 and September 25, 2021, including what documentation or other written records were created (or should have been created) during processing.

*See* Pineiro Decl. Ex. D, at 5.  The DHS Defendants rejected this additional "catch-all" request because it is both duplicative and, once again, fails to reasonably describe the records sought.

There is no dispute regarding Sections B and C of the May 2 Proposal, which restate one portion of the October 2021 Request and the entire February 2022 Request.

With regard to Section D of the May 2 Proposal, Plaintiffs accepted the DHS Defendants' proposal to search the email communications of fourteen custodians, but continued to demand that the DHS Defendants use search terms and search parameters prescribed by Plaintiffs in conducting these searches.  *See* Pineiro Decl. Ex. D, at 5–6.  Accordingly, the only remaining disputes concern (1) Plaintiffs' Request Nos. 6 and 7 added to Section A of the May 2 Proposal; and (2) Plaintiffs' insistence that the DHS Defendants apply their proposed search terms to the email communications in Section D.

**ARGUMENT**

**THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT TO THE DHS DEFENDANTS LIMITING THE OCTOBER 2021 REQUEST TO THE MAY 2 PROPOSAL AS MODIFIED AND ALLOWING THE DHS DEFENDANTS TO EXERCISE THEIR DISCRETION TO CRAFT REASONABLE SEARCHES FOR RESPONSIVE EMAIL COMMUNICATIONS**

Summary judgment is warranted if a movant shows "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  The moving party bears the burden of showing that it is entitled to summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).[3]  Under FOIA, agencies can meet this burden through declarations, which are entitled to a presumption of good faith.  *See Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999); *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994).  The nonmoving party may not rely solely on "conclusory allegations or unsubstantiated speculation" to defeat a motion for summary judgment.  *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).  Rather, the nonmoving party must "produce specific facts indicating that a genuine factual issue exists." *Id.* (internal quotation marks omitted).

In this case, the DHS Defendants have submitted declarations showing that there is no genuine dispute that Request Nos. 1 and 2 of the October 2021 Request do not reasonably describe the records sought, that the May 2 Proposal represents a reasonable effort to clarify the scope of the October 2021 Request, and that Plaintiffs' proposed additional Request Nos. 6 and 7 are improper for the same reasons as their original requests.  The Court should therefore grant summary judgment limiting the scope of the October 2021 Request to what is set forth in the May 2 Proposal.  *See* Pineiro Decl. Ex. C, at 1–6.  The Court should also reject Plaintiffs' effort to dictate the search terms to be applied to search for responsive electronic communications in Section D of the May 2 Proposal, *id.* at 7–8, and instead allow the DHS Defendants to exercise their discretion under FOIA to craft reasonable searches for responsive records.

---

[3] The DHS Defendants have not submitted a Local Rule 56.1 statement because "[t]he general rule in this Circuit is that in FOIA actions . . . Local Civil Rule 56.1 statements are not required." *New York Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) (internal quotations marks and alterations omitted).

A. **The Court Should Limit the October 2021 Request to the May 2 Proposal, as Modified, and Reject Plaintiffs' Proposed Request Nos. 6 and 7**

An agency need only respond to a FOIA request that "reasonably describes" the records sought.  5 U.S.C. § 552(a)(3)(A).  The "reasonable description" requirement has at least two criteria that are relevant here.  First, the searching agency must be able "to determine precisely what records are being requested."  *Amnesty Int'l USA v. CIA*, No. 07 Civ. 5435 (LAP), 2008 WL 2519908, at *12 (S.D.N.Y. June 19, 2008) (internal quotation marks omitted)); *accord Yeager*, 678 F.2d at 326; *Ctr. for Immigr. Stud. v. USCIS*, 628 F. Supp. 3d 266, 270 (D.D.C. 2022) (citing cases).  "[B]road, sweeping requests lacking specificity are not permissible" under the statute. *Yagman v. Pompeo*, 868 F.3d 1075, 1081 (9th Cir. 2017) (citations omitted).

Second, "a professional employee of the agency familiar with the subject matter" must be able to "locate the records with a reasonable amount of effort."  *Informed Consent Action Network v. FDA*, No. 20 Civ. 689 (AJN), 2022 WL 902083, at *2 (S.D.N.Y. Mar. 28, 2022) (internal quotation marks omitted); *accord Ctr. for Immigr. Studies*, 628 F. Supp. 3d at 270; *Seife v. U.S. Department of State*, 298 F. Supp. 3d 592, 611 (S.D.N.Y. 2018); *Freedom Watch, Inc. v. CIA*, 895 F. Supp. 2d 221, 228 (D.D.C. 2012); *see also* 6 C.F.R. § 5.3(b) (DHS regulation requiring requester to "describe the records sought in sufficient detail to enable DHS personnel to locate them with a reasonable amount of effort").  A request requires unreasonable effort if it would effectively require the agency to search for all agency records on a given topic.  *See Ctr. for Immigr. Studies*, 628 F. Supp. 3d at 271 (citing *Nat'l Sec. Counselors v. CIA*, 969 F.3d 406, 409-10 (D.C. Cir. 2020)); *Clevenger v. DOJ*, No. 18 Civ. 1568 (LB), 2020 WL 1846565, at *13 (E.D.N.Y. Apr. 3, 2020) (request for "all" records was "not specific, detailed or narrow in any sense"); *Dale v. I.R.S.*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002) (request for "any and all" documents "does not describe the records sought with reasonably sufficient detail in light of both the statutory guidance and case

law") (internal quotation marks omitted).

Applying both of these criteria, Request Nos. 1 and 2 of the October 2021 Request do not reasonably describe the records sought.  As described above, Request Nos. 1 and 2 effectively seek all agency records, without description of or limitation as to the types of records sought, relating to migrants in the Del Rio Sector in September 2021.  Because of the breadth of the request and its call for virtually "all" agency records about migrants in Del Rio during the relevant time period, these requests do not allow the DHS Defendants to determine precisely what records are being sought.  *See* Pineiro Decl. ¶¶ 20–22; Howard Decl. ¶¶ 16–18; Pavlik-Keenan Decl. ¶¶ 16–18; *see Yagman*, 868 F.3d at 1081.  In addition, responding to the requests as drafted would require unreasonable effort, as the DHS Defendants would need to search for and review virtually every single record relating to migrants in the Del Rio Sector during the relevant period, to determine whether they are responsive to Plaintiffs' broadly worded requests.  *See id*.  This is impermissible under FOIA, and the DHS Defendants cannot be compelled to conduct such a blanket search.  *See Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 271 ("Without more specificity, FOIA processors faced with such [broad] language stand in a hopeless muddle without clear guidance about what documents the requestor wanted.") (internal quotation marks omitted); *Dale*, 238 F. Supp. 2d at 104 ("[C]ourts have found that FOIA requests for *all* documents concerning a requestor are too broad").

The May 2 Proposal attempts to remedy these deficiencies by identifying specific records or categories of records for which the DHS Defendants can conduct searches with reasonable effort.  The May 2 Proposal identifies the types of records maintained by the DHS Defendants that would likely contain the information Plaintiffs appear to be seeking, for which the DHS Defendants could conduct searches with reasonable effort and without having to review virtually

all migrant records during the relevant period. *See* Pineiro Decl. ¶ 25; Howard Decl. ¶ 21; Pavlik-Keenan Decl. ¶ 24.

Plaintiffs nonetheless insist that the DHS Defendants must conduct searches for unreasonably broad and sweeping categories of records set forth in their Request Nos. 6 and 7. *See* Pineiro Decl. Ex. D, at 5–6. Because these requests are as vague, overbroad and sweeping as Request Nos. 1 and 2 of the October 2021 Request, and would require unreasonable effort to process, they are not reasonably described and should be rejected.

### 1.    Plaintiffs' Proposed Request No. 6

In addition to the records in the May 2 Proposal which the DHS Defendants have already agreed to search for, Plaintiffs' proposed Request No. 6 demands that the agencies also search for "Records reflecting" data in seven different categories. *See* Pineiro Decl. Ex. D, at 4–5. The majority of Plaintiffs' Request Nos. 6(a)–(g), which must be read "as drafted," *Am. Ctr. for Law and Justice v. DHS ("ACLJ")*, 573 F. Supp. 3d 78, 86 (D.D.C. 2021), do not reasonably describe the records sought. With the exception of certain data that the DHS Defendants have agreed to search for,[4] the remainder of Plaintiffs' Request No. 6, is impermissibly vague and overbroad and would require unreasonable effort to process.

For example, the clause in proposed Plaintiffs' Request No. 6(a) demands that the DHS Defendants search for "Records reflecting" "documents sufficient to show how the Agency processed and resolved any request" for "food; water; housing or shelter; medical treatment (including COVID-19 vaccinations and testing); sanitation facilities; hygiene products; diapers; baby food and formula; and clothing." Pineiro Decl. Ex. D, at 4. Under a plain reading of this

---

[4] As noted above, the DHS Defendants have agreed to search for some of the data requested in Plaintiff's proposed Request Nos. 6(a) and 6(d). *Compare* Pinero Decl. Ex. D, at 4–5 *with* Ex. C, at 4.

request, the DHS Defendants would have to search for and review virtually *all* daily operational communications to determine whether and how individual employees responded to any migrant's request for food, water, housing, medical treatment, and other necessities.  *See* Pineiro Decl. ¶ 29; Howard Decl. ¶ 25; Pavlik-Keenan Decl. ¶ 27.  Plaintiffs' Request No. 6(b) would require a similar search for and review of virtually all daily operational communications to determine how much and how many times individual DHS employees provided food, water, housing, medical care, and other necessities to any migrants.  Pineiro Decl. ¶ 30; Howard Decl. ¶ 26; Pavlik-Keenan Decl. ¶ 27.

Plaintiffs' remaining requests are similarly overbroad.  Plaintiffs' Request No. 6(c), which seeks "Records reflecting . . . how the Agency tracked and addressed" migrant deaths, drownings, pregnancies, labor and deliveries, and hospitalizations, Pineiro Decl. Ex. D, at 4, would essentially require the agencies to review virtually *all* migrant health records to discern which of those records "reflected" deaths, drownings, pregnancies, labor and deliveries, or hospitalizations because the request contains no limiting language.  *See* Pineiro Decl. ¶ 31; Howard Decl. ¶ 27; Pavlik-Keenan Decl. ¶ 27.  Request No. 6(e) seeks "data" of "Records reflecting…the types of documents" collected from, returned to, given to, and created by the agencies when "processing" migrants in Del Rio.  Pineiro Decl. Ex. D, at 4.  This also would effectively require the agencies review virtually all operational communications to identify every piece of paper exchanged between an agency employee and a migrant, and every piece of paper created by an agency in the course of "processing" migrants.  *See* Pineiro Decl. ¶ 32; Howard Decl. ¶ 28.

Plaintiffs' Request No. 6(f) seeks "Records sufficient to show how the Agency tracked" "the age, immigration history (if any), expressed fear of return (if applicable), medical condition, and familial relationships of Migrants in Del Rio."  *See* Pineiro Decl. Ex. D, at 5.  Plaintiffs'

Request No. 6(g) seeks similar information for migrants with a baby born in Del Rio who were "expelled, removed, or deported." *Id.*  ICE's operational mission includes the enforcement of federal immigration laws, *see* https://ice.gov/mission (last visited Aug. 11, 2023), and CBP's operational mission includes detecting and preventing individuals from illegally entering the United States, *see* https://cbp.gov/border-security/along-us-borders/ (last visited Aug. 11, 2023). A comprehensive search for records "tracking" a migrant's "immigration history" would entail searches of those agencies' investigative records, law enforcement databases, and Alien files, or A-files,[5] of every migrant in Del Rio.  *See* Pineiro Decl. ¶ 33; Howard Decl. ¶ 29.

A plain reading of the objected-to portions of Plaintiffs' Request No. 6 would not allow the DHS Defendants to search for responsive records with reasonable effort, because they essentially would cover all medical records and/or communications to, from, and between any and all agency employees who interacted with migrants, provided medical care to migrants, discussed the individual requests and needs of migrants, and were involved with the "processing" of migrants, "tracking" migrants, and the removal of migrants from the United States, among other things.  Such "language is analogous to requests for records that relate 'in any way' to a person or event, which courts have repeatedly found to be overly broad and unreasonable." *McKinley v. FDIC*, 807 F. Supp. 2d 1, 7 (D.D.C. 2011) (citing cases); *see also ACLJ*, 573 F. Supp. 3d at 87 (FOIA request was improper where "any search responsive to the plain language of [Plaintiff's] request would require, at a minimum, a review of communications by 'any and all employees' at three agencies (ICE, CBP, and USCIS) that might be 'remotely related'" to the categories of

---

[5] An A-file "contains all the individual's official record material such as naturalization certificates; various forms (and attachments, e.g., photographs); applications and petitions for benefits under the immigration and nationality laws; reports of investigations; statements; reports; correspondence; and memoranda on each individual for whom [legacy] INS has created a record under the Immigration and Nationality Act." *Dent v. Holder*, 627 F.3d 365, 372 (9th Cir. 2010).

information Plaintiffs sought, and "without any limitation on the method or form of communication"). Accordingly, this Court should reject Plaintiffs' proposed Request No. 6 and require the DHS Defendants to search only for the records described in their proposed Request No. 6 in the May 2 Proposal. Pineiro Decl. Ex. C, at 4.

### 2. Plaintiffs' Proposed Request No. 7

The DHS Defendants have already agreed to search for and produce non-exempt portions of responsive records in several categories set forth in the May 2 Proposal as modified. Plaintiffs, however, have demanded that DHS Defendants conduct duplicative searches for "Records reflecting" numerous types of information "*to the extent not captured in the preceding sections Nos. 1–6. . . .*" *See* Pineiro Decl. Ex. D at 5 (emphasis added). Plaintiffs' proposed catch-all Request No. 7, with its seven subparts, is unreasonable in multiple respects.

First, Plaintiffs' proposed Request No. 7 would require multiple, duplicative searches for records responsive to Request Nos. 1–5 of the May 2 Proposal as agreed upon by the parties, and Request No. 6 as modified by the DHS Defendants. Pineiro Decl. Ex. C, at 1–4. To the extent the agencies have conducted searches that are reasonably calculated to uncover documents responsive to Request Nos. 1–6 of the May 2 Proposal, *see Smolen v. Federal Aviation Administration*, No 22 Civ. 44 (LJL), 2023 WL 3818105, at *12 (S.D.N.Y. June 2, 2023), FOIA does not obligate them to conduct additional searches for documents somehow "not captured" in their reasonable search. *See Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 363 (4th Cir. 2009) (where "[s]ubstantial portions of the [FOIA] requests overlapped . . . wholly new and independent searches for each request would be duplicative and without a discernible benefit"; "Simply put, the FOIA did not require the [agency] to perform an entirely new, duplicative search for each request.").

Second, Plaintiffs' proposed Request No. 7 reprises the same flawed requests that were cured by the May 2 Proposal. Like the original requests, the catch-all request does not "reasonably

describe the records sought" "in sufficient detail to enable DHS personnel to locate them with a reasonable amount of effort."  6 C.F.R. § 5.3(b); *see also Yagman*, 868 F.3d at 1081; *Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 271. Instead, it impermissibly shifts the burden to the DHS Defendants to guess which additional records might not be "not captured by the preceding Request Nos. 1–6."  And like the original requests, it would require the agency to review virtually all migrant records from the relevant period that may contain information in the requested seven categories.  *See* Pineiro Decl. ¶ 37; Howard Decl. ¶ 33; Pavlik-Keenan Decl. ¶ 30.  FOIA does not require the DHS Defendants to embark on such an "all encompassing fishing expedition."  *Dale*, 238 F. Supp. 2d at 105 (request for "any and all documents" that relate in any way to a taxpayer constituted "all-encompassing fishing expedition of files at IRS offices across the country, at taxpayer expense"); *see also Clevenger* 2020 WL 1846565, at *13 (citing *Dale*).

This Court should therefore reject Plaintiffs' Request No. 7 in its entirety.

**B.     The Court Should Allow the DHS Defendants to Exercise Their Discretion to Craft Reasonable Searches for Responsive Email Communications**

The DHS Defendants have agreed to search the e-mail communications and attachments of fifteen proposed DHS-HQ, CBP, and ICE custodians, *see* Pineiro Decl. Ex. C, at 7–8,[6] but have been unable to reach agreement with Plaintiffs regarding the search terms to be applied to the custodians' e-mailboxes.  Accordingly, the DHS Defendants intend to exercise their discretion under FOIA to craft reasonable searches, including search terms, to identify responsive records. Pineiro Decl. ¶ 24; Howard Decl. ¶ 20; Pavlik-Keenan Decl. ¶ 31.

It is well settled that "[f]ederal agencies have discretion in crafting a list of search terms that they believe to be reasonably tailored to uncover documents responsive to the FOIA request."

---

[6] Although the May 2 Proposal lists fourteen proposed custodians, CBP has subsequently agreed to search the e-mail communications and attachments of an additional custodian, Chris Magnus.

*Agility Pub. Warehousing Co. K.S.C. v. Nat'l Sec. Agency*, 113 F. Supp. 3d 313, 339 (D.D.C. 2015) (internal quotation marks and alteration omitted).  A "FOIA petitioner cannot dictate the search terms for his or her FOIA request."  *Bigwood v. DOD*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015); *accord NAACP Legal Def. & Educ. Fund, Inc. v. DOJ.*, 463 F. Supp. 3d 474, 484 (S.D.N.Y. 2020); *Agility Pub. Warehousing Co.*, 113 F. Supp. 3d at 339 ("There is no bright-line rule requiring agencies to use the search terms proposed by a plaintiff." (citation and internal quotation marks omitted)).  Nor can FOIA requesters "nit-pick[]" an agency's choice of search terms.  *Doyle v. U.S. Dep't of Homeland Sec.*, 331 F. Supp. 3d 27, 55 (S.D.N.Y. 2018).

If Plaintiffs disagree with the search terms and parameters utilized by the DHS Defendants, they may challenge the adequacy of the agencies' searches at a later stage, *after* the agencies have produced any responsive records.  *See Agility Pub. Warehousing Co.*, 113 F. Supp. 3d 339 ("The plaintiff's insistence on its own preferred search terms does not undermine the *reasonableness* of the [agency's] search terms."); *see also SAI v. Transportation Sec. Admin.*, 315 F. Supp. 3d 218, 241 (D.D.C. 2018) ("[T]he agency need not deploy every conceivable search term or permit the FOIA requester to dictate the search terms in the course of litigation . . .").  Accordingly, the Court should allow the DHS Defendants to exercise the discretion accorded them under FOIA to craft the search parameters they will utilize to locate potentially responsive e-mail communications and attachments.  *See Agility Pub. Warehousing Co.*, 113 F. Supp. 3d at 339 (courts should not "micromanage" an agency's search).

## CONCLUSION

For the foregoing reasons, the DHS Defendants respectfully request that the Court grant partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, limiting the October 2021 Request to the May 2 Proposal as subsequently modified by the DHS Defendants

and allowing the DHS Defendants to exercise their discretion to craft reasonable searches for

responsive records.

Dated: August 11, 2023
        New York, New York

                                        DAMIAN WILLIAMS
                                        United States Attorney for the
                                        Southern District of New York

                               By:      */s/ Dana Walsh Kumar*
                                        DANA WALSH KUMAR
                                        TOMOKO ONOZAWA
                                        Assistant United States Attorneys
                                        86 Chambers Street, 3rd Floor
                                        New York, New York 10007
                                        Tel.:   (212) 637-2741/2721
                                        Fax:    (212) 637-2686
                                        Email: dana.walsh.kumar@usdoj.gov
                                               tomoko.onozawa@usdoj.gov