UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HAITIAN BRIDGE ALLIANCE, AFRICAN
COMMUNITIES TOGETHER, and UNDOCUBLACK
NETWORK,

                                 Plaintiffs,

                        -v-

U.S. DEPARTMENT OF HOMELAND SECURITY, U.S.
CUSTOMS AND BORDER PROTECTION, U.S.
IMMIGRATION AND CUSTOMS ENFORCEMENT, and
FEDERAL BUREAU OF PRISONS,

                                 Defendants.

22 Civ. 8344 (ER)

---

**DEFENDANTS U.S. DEPARTMENT OF HOMELAND SECURITY,
U.S. CUSTOMS AND BORDER PROTECTION, AND
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT'S
MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2741/2721
Fax: (212) 637-2686
Email: dana.walsh.kumar@usdoj.gov
        tomoko.onozawa@usdoj.gov

DANA WALSH KUMAR
TOMOKO ONOZAWA
Assistant United States Attorneys,
   *Of Counsel*

# TABLE OF CONTENTS

ARGUMENT ................................................................................................................3

    A.    The Court Should Reject Plaintiffs' Proposed Additions to Request No. 6 and All of Proposed Request No. 7................................................................3

        1.    This Court Should Not Compel the DHS Defendants to Search for Records Responsive to the Disputed Portions of Plaintiffs' Proposed Request No. 6................................................................4

        2.    This Court Should Not Compel the DHS Defendants to Search for Records Responsive to the Entirety of Plaintiffs' Proposed Request No. 7................................................................6

    B.    Plaintiffs Cannot Compel the DHS Defendants to Apply Their Preferred Search Terms ................................................................8

    C.    The Court Should Reject Plaintiffs' Demand that Each Agency Process 1,500 Records Per Month ................................................................9

        1.    Legal Standards................................................................10

        2.    Plaintiffs' FOIA Requests Are Not Entitled to Expedited Processing ................................................................13

        3.    Plaintiffs' Proposed Processing Rate Is Not Practicable ..........................16

CONCLUSION................................................................................................................19

i

# TABLE OF AUTHORITIES

PAGE(S)

Cases

*ACLU v. DOJ*,
   No. C 04-4447 (PJH), 2005 WL 588354 (N.D. Cal. Mar. 11, 2005) ...................................... 12

*Al-Fayed v. CIA*,
   254 F.3d 300 (D.C. Cir. 2001) ...................................................................................... 12, 14, 15

*Allied Progress v. Consumer Fin. Prot. Bureau*,
   No. CV 17-686 (CKK), 2017 WL 1750263 (D.D.C. May 4, 2017) ........................................ 12

*American Chemistry Council, Inc. v. HHS*,
   953 F. Supp. 2d 120 (D.D.C. 2013) ...................................................................................... 8

*Bigwood v. Dep't of Defense*,
   132 F. Supp. 3d 124 (D.D.C. 2015) ...................................................................................... 8

*Bloomberg L.P. v. FDA*,
   500 F. Supp. 2d 371 (S.D.N.Y. 2007) ................................................................................. 12

*Brennan Ctr. for Just. v. DOJ*,
   377 F. Supp. 3d 428 (S.D.N.Y. 2019) ................................................................................. 8, 9

*Brennan Ctr. for Just. v. DOJ*,
   300 F. Supp. 3d 540 (S.D.N.Y. 2018) ................................................................................. 16

*Carney v. U.S. Dep't of Justice*,
   19 F.3d 807 (2d Cir. 1994) ................................................................................................. 3

*Colbert v. FBI*,
   No. 16-CV-1790 (DLF), 2018 WL 6299966 (D.D.C. Sept. 3, 2018) ...................................... 13

*Documented NY v. U.S. Dep't of State*,
   No. 20-CV-1946 (AJN), 2021 WL 4226239 (S.D.N.Y. Sept. 16, 2021)........................... 13, 18

*Fox News Network, LLC v. U.S. Dep't of the Treasury*,
   678 F. Supp. 2d 162 (S.D.N.Y. 2009)................................................................................... 9

*Grand Cent. P'ship v. Cuomo*,
   166 F.3d 473 (2d Cir. 1999).................................................................................................. 3

*Immigrant Defense Project v. DHS*,
  20 Civ. 10625 (RA), 2023 WL 1966178 (S.D.N.Y. Feb. 13, 2023) ......................................... 9

*Khan v. DHS*,
  22-2480 (TJK), 2023 WL 6215359 (D.D.C. Sept. 25, 2023) .................................................. 15

*Landmark Legal Found. v. EPA*,
  910 F. Supp. 2d 270 (D.D.C. 2012) ................................................................................. 11, 14

*Middle E. Forum v. DHS*,
  297 F. Supp. 3d 183 (D.D.C. 2018) ........................................................................... 13, 16, 18

*Muttitt v. Dep't of State*,
  926 F. Supp. 2d 284 (D.D.C. 2013) ................................................................................. 11, 12

*NAACP Legal Defense & Educ. Fund, Inc. v. Dep't of Justice*,
  463 F. Supp. 3d 474 (S.D.N.Y. 2020) ..................................................................................... 9

*Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't Agency*,
  877 F. Supp. 2d 87  (S.D.N.Y. 2012) ...................................................................................... 9

*Nat'l Sec. Counselors v. DOJ*,
  848 F.3d 467 (D.C. Cir. 2017) .............................................................................................. 18

*Open Soc'y Just. Initiative v. CIA*,
  399 F. Supp. 3d 161 (S.D.N.Y. 2019) ................................................................................... 18

*Oversight v. DOJ*,
  292 F. Supp. 3d 501 (D.D.C. 2018) ...................................................................................... 15

*Privacy Info. Ctr. v. Dep't of Def.*,
  355 F. Supp. 2d 98 (D.D.C. 2004) ........................................................................................ 12

*Privacy Info. Ctr. v. DOJ*,
  15 F. Supp. 3d 32 (D.D.C. 2014) .......................................................................................... 13

*Washington v. FEC*,
  711 F.3d 180 (D.C. Cir. 2013) .............................................................................................. 10

Statutes

5 U.S.C. § 552(a)(6)(A)(i) ..................................................................................................... 10

5 U.S.C. § 552(a)(6)(E) .......................................................................................................... 11

5 U.S.C. §§ 552(a)(3)(A) ....................................................................................................... 10

Regulations

6 C.F.R. § 5.5(e)(1) ................................................................................................ 12, 15

Defendants the U.S. Department of Homeland Security ("DHS-HQ"), U.S. Customs and Border Protection ("CBP"), and U.S. Immigration and Customs Enforcement ("ICE") (collectively, the "DHS Defendants" or the "Government"), by their attorney, Damian Williams, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in further support of their motion for partial summary judgment and in opposition to Plaintiffs' cross-motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

First, this Court should reject the disputed portions of Plaintiffs' Request No. 6 and all of Request No. 7. The DHS Defendants have proffered sworn declarations explaining why those requests are vague and overbroad, and will require agency FOIA personnel to conduct unreasonable and burdensome searches and reviews of their operational records to respond to those requests. In response, Plaintiffs insist without any factual basis that a "professional employee" should still be able to find those records. Specifically, for the disputed portions of Request No. 6, Plaintiffs continue to insist in conclusory fashion that a request for records "reflecting" or that are "sufficient to show" broad aspects of the treatment and processing of thousands of migrants in Del Rio, Texas, is "specific" and "clearly defined." Moreover, to the extent Plaintiffs claim that Request No. 6 only seeks "aggregate" data, the DHS Defendants' proposed reformulation of parts of Request No. 6 already reflects their agreement to conduct a reasonable search for records reflecting aggregate data. As for Plaintiffs' catch-all Request No. 7 for "Records reflecting" the same kind of information that the DHS Defendants have already agreed to search for, but "to the extent not [already] captured," by those previous requests, the DHS Defendants' declarations explain why Request No. 7 hardly explains or clarifies what more Plaintiffs are looking for beyond the records sought in Request Nos. 1–5 and the modified portions of Request No. 6.

Second, Plaintiffs continue to demand that the Court order each of the DHS Defendants to search the electronic communications of selected agency custodians by using Plaintiffs' preferred search terms from the outset.  This demand is contrary to established law holding that federal agencies have the discretion to craft appropriate search terms to locate potentially responsive records.  The demand is also premature because the DHS Defendants' searches, processing, and productions of non-exempt responsive records are not yet complete.  Once the DHS Defendants have completed those steps, Plaintiffs are free to challenge the adequacy of the agencies' searches in a subsequent summary judgment motion.

Third, Plaintiffs have demanded that each of the DHS Defendants be subject to an expedited schedule of 1,500 pages per month, without regard to the relevant legal standards for expedited processing.  Moreover, other than characterizing their requested documents as "urgent" and "high-profile" in nature, Plaintiffs' demand fails to consider what the agencies can practicably process in light of their limited resources and competing FOIA backlogs and obligations to other FOIA requesters, as described in the DHS Defendants' sworn declarations.

This Court should therefore grant partial summary judgment to the DHS Defendants limiting the DHS Defendants' responses to Plaintiffs' FOIA requests to what is contained in the May 2 Proposal, with certain modifications to which the DHS Defendants have since agreed, and allow the DHS Defendants to exercise their discretion to craft reasonable searches for responsive records.  This Court should further deny Plaintiffs' cross-motion for partial summary judgment, and adopt the DHS Defendants' proposed processing rates of 500 pages, 750 pages, and 400 pages per month, respectively, for CBP, ICE, and DHS-HQ.

**ARGUMENT**

A.      **The Court Should Reject Plaintiffs' Proposed Additions to Request No. 6 and All of Proposed Request No. 7**

Plaintiffs assert, without any evidence, that a "professional employee" familiar with the records sought in their proposed Request Nos. 6 and 7 "should be able to find these requested records 'with a reasonable amount of effort.'"  Pls.' Mem. of Law in Opp. to Defs.' Mot. and in Support of Pls.' Cross-Mot. for Partial Summ. J., ECF No. 67 ("Pls.' Br.") at 13, 17.  This broad assertion completely ignores sworn declarations from each of the DHS Defendants which explain why the disputed portions of Plaintiffs' Request No. 6 (specifically, Request Nos. 6(a), 6(c), 6(e), and 6(f)), and the entirety of Request No. 7 are overly vague and overbroad, and will require agency FOIA personnel to conduct an unreasonable and burdensome review of all operational records, alien files, alien health records, agency communications, and other broad categories of records to respond to those requests.  *See* ECF No. 61, First Declaration of Fernando Pineiro, dated Aug. 11, 2023 ("Pineiro Decl. I") ¶¶ 28–37; ECF No. 62, First Declaration of Patrick Howard, dated Aug. 11, 2023 ("Howard Decl. I") ¶¶ 23–33; ECF No. 63, First Declaration of Catrina Pavlik-Keenan, dated Aug. 11, 2023 ("Pavlik-Keenan Decl. I") ¶¶ 27–30.  Those declarations, which are entitled to a presumption of good faith, are sufficient to carry the DHS Defendants' burden on summary judgment, and are not overcome by Plaintiffs' *ipse dixit*.  *See Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) (citing *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994)).  Accordingly, the Court should deny the disputed portions of Plaintiffs' proposed Request Nos. 6 and all of proposed Request No. 7.

1.  **This Court Should Not Compel the DHS Defendants to Search for Records Responsive to the Disputed Portions of Plaintiffs' Proposed Request No. 6**

In addition to the records in the May 2 Proposal that the DHS Defendants have already agreed to search for, Plaintiffs' proposed Request No. 6 demands that the agencies also search for "Records reflecting" data in seven different categories.  *See* Pineiro Decl. I, Ex. D, at 4–5.  The DHS Defendants have shown that, with the exception of certain aggregate data that the DHS Defendants believe they may have in the form of potentially responsive data sets, tables or charts,[1] the rest of Plaintiffs' Request No. 6 is impermissibly vague and overbroad and will require unreasonable effort to process.  *See* Pineiro Decl. I ¶¶ 28–34; Howard Decl. I ¶¶ 24–30; Pavlik-Keenan Decl. I ¶¶ 27–28.

Plaintiffs have not rebutted this showing.  Plaintiffs contend that their request for "Records reflecting" the "total number of requests made by Migrants" for food, water, housing or shelter, medical treatment, sanitation facilities, hygiene products, diapers, baby food and formula, and clothing, and "documents sufficient to show how the Agency processed and resolved any request for the same," *see* Pinero Decl. I, Ex. D, at 5, cannot be "fairly read" to require the agencies to gather and scour all daily operational communications in the Del Rio Sector for all references to migrants' requests for those items.  However, Plaintiffs have failed to explain how the agencies' reading of the same request is not a fair interpretation of the scope of the request.   By its plain terms and according to agency personnel familiar with the DHS Defendants' record systems, Plaintiffs' request for all records "reflecting" a migrant's request for food would necessitate a search and review of all employee communications that may mention individual migrants' requests

---

[1] As noted previously, the DHS Defendants have agreed to search for some of the data requested in Plaintiffs' proposed Request Nos. 6(a) and 6(d).  ECF No. 60 ("Defs.' Br.") at 14 n.4.

for food and employees' responses to those requests.  *See* Pineiro Decl. I ¶¶ 29–33; Howard Decl.

I ¶¶ 25–29; Pavlik-Keenan Decl. I ¶ 27.  Similarly, Plaintiffs' request for records "sufficient to

show" or "reflecting" "how the Agency tracked and addressed" deaths, drownings, pregnancies,

labors and deliveries, and hospitalizations of migrants in Del Rio, *see* Pineiro Decl. I, Ex. D, at 5,

by its plain terms and according to agency personnel familiar with the DHS Defendants' record

systems, would require an exhaustive search and review of all migrant health records which, by

definition, "track" or record a migrant's health and medical condition.  *See* Pineiro Decl. I ¶ 31;

Howard Decl. I ¶ 27.

Instead, Plaintiffs insist—again in conclusory fashion—that a search for documents

"reflecting" or "sufficient to show" whether migrants requested certain necessities, whether those

necessities were provided, whether migrants needed medical care, and whether such care was

provided, for example, will somehow *not* "require collection of all documents" that may

potentially reflect that information.  Pls.' Br. at 13–14.  To the extent Plaintiffs now claim that

Request No. 6 only seeks "aggregate" data, *id.*, the DHS Defendants' proposed reformulation of

parts of Request No. 6 already reflects the DHS Defendants' agreement to conduct a reasonable

search for records reflecting the following aggregate data:

    a.    The total volumes or quantities of food; water; housing or shelter; medical care (including COVID-19 vaccinations and testing); sanitation facilities; hygiene products; diapers; baby food and formula; and clothing.

    b.    The total numbers of deaths of migrants; drowning of migrants; pregnancies of migrants; migrants going into labor or giving birth; and hospitalizations of migrants in Del Rio between September 1, 2021, and September 25, 2021.

Pineiro Decl. I, Ex. C, at 4.  *See also* Pineiro Decl. I ¶ 34; Howard Decl. I ¶ 30; Pavlik-Keenan

Decl. I ¶ 28.  Accordingly, this Court should reject Plaintiffs' proposed Request No. 6 and approve

the DHS Defendants' proposal to search only for the records in the DHS Defendants' Request No.

6 in the May 2 Proposal as modified.

>    2.    **This Court Should Not Compel the DHS Defendants to Search for
>          Records Responsive to the Entirety of Plaintiffs' Proposed Request
>          No. 7**

In their Proposed Request No. 7, Plaintiffs have demanded that the DHS Defendants

conduct duplicative, vague, and overbroad searches for "Records reflecting" numerous types of

information "*to the extent not captured in the preceding sections Nos. 1–6. . . .*" Pineiro Decl. I

Ex. D, at 6 (emphasis added).  As the DHS Defendants' declarants have affirmed, an additional

request for "Records reflecting" the same kind of information that the DHS Defendants have

already agreed to search for, but "to the extent not [already] captured" by the previous requests,

*id.*, would require the agencies to review virtually all migrant records from the relevant period that

may contain information in the requested seven categories.  *See* Pineiro Decl. I ¶ 37; Howard Decl.

I ¶ 33; Pavlik-Keenan Decl. I ¶ 30.  While Plaintiffs baldly insist that the DHS Defendants are

relying on a "misguided reading of the request," Pls.' Br. at 16, they offer no factual basis to

challenge the informed judgments of the agency declarants, who are in a better position than

Plaintiffs to know what the searches would entail.

Plaintiffs insist that Request No. 7 "lists categories that are specific, properly described,

and confined to events at a given location (Del Rio) during a limited time period (September 1–

25, 2021)" including "if, when, and how the amount or speed of water flowing through the Rio

Grande River within the Del Rio Sector changed" (Request 7(a)); "if, when, and how horse patrols,

use of force techniques," and other techniques were used against migrants (Request 7(b)); how the

government determined whether migrants in Del Rio "should be arrested, removed, detained,

deported, or expelled" (Request 7(c)); and "how the federal government processed migrants in Del

Rio, including what documentation or other written records were created (or should have been

created) during processing."  Pls.' Br. at 16–17 (citing Request 7(g)); *see also* Pineiro Decl. I, Ex. D, at 5.

However, Request Nos. 1–5, which the DHS Defendants have agreed to search for, seek much of the substantive information sought in Request No. 7 concerning migrants who were in the Del Rio sector from September 1 through September 25, 2021, but within a defined set of records that would not require the agencies to review virtually all migrant files from the relevant time period.  Pineiro Decl. I, Ex. D, at 1–4.  Request No. 1(d) seeks "policies, procedures, directives and formal guidance" that governed "[w]hether and under what circumstances CBP could change or request that a third party change the amount or speed of water flowing through the Rio Grande River within the Del Rio Sector.  *Id.* at 1.  Request No. 1(e) seeks "policies, procedures, directives and formal guidance" concerning "[t]he use of horse patrols, use of force, crowd management, crowd control, restraints, motorcycles," and other use of force techniques against migrants.  *Id.* Request No. 1(g) seeks "policies, procedures, directives and formal guidance" concerning "[t]he manner in which migrants should be transported, deported, removed, or expelled from the Del Rio Sector, or arrested in the Del Rio Sector."  *Id.* at 2.  Request No. 1(h) seeks "policies, procedures, directives and formal guidance" concerning "[t]he processing of migrants arriving at the Del Rio Sector."  *Id.*

By proposing a duplicative, vague, and overbroad request that seeks the substance of the information requested in Request Nos. 1–5, but "to the extent not captured" in those preceding sections, Plaintiffs have reinserted the same problems of vagueness and overbreadth that the May 2 Proposal was intended to correct.  *See* Pineiro Decl. I ¶ 37; Howard Decl. I ¶ 33; Pavlik-Keenan Decl. I ¶ 30.  Plaintiffs' contention that the agencies can "disregard Plaintiffs' attempt to reduce their burden" and "produce documents twice," Pls.' Br. at 18, fails to address the fundamental

problem with Plaintiffs' request.  Plaintiffs' request was vague and overbroad to begin with;

Request Nos. 1–5 represent a reasonable effort to cure those deficiencies; and Plaintiffs' Request

No. 7 not only reintroduces the deficiencies but would also result in duplicative searches.

Accordingly, this Court should reject Plaintiffs' Request No. 7 in its entirety.

## B.      Plaintiffs Cannot Compel the DHS Defendants to Apply Their Preferred Search Terms

Plaintiffs' cross-motion for partial summary judgment asks the Court to enter an order

directing the DHS Defendants "to employ the search terms Plaintiffs proposed over [certain

prescribed] time periods." Pls.' Br. at 19–20.  As discussed in the DHS Defendants' opening brief,

however, "[f]ederal agencies have discretion to craft the search terms that they believe to be

reasonably tailored to uncover documents responsive to a FOIA request," *Brennan Ctr. for Just.

v. DOJ*, 377 F. Supp. 3d 428, 434 (S.D.N.Y. 2019), and "[i]in general, a FOIA petitioner cannot

dictate the search terms for his or her FOIA request," *Bigwood v. Dep't of Defense*, 132 F. Supp.

3d 124, 140 (D.D.C. 2015).  *See* Defs.' Br. at 18–19.

Moreover, as Plaintiffs know, the DHS Defendants have not yet completed their searches,

processing, and productions of non-exempt e-mails of selected custodians "regarding the DHS

Defendants' policies, directives, and actions relating to the treatment, processing and removal of

migrants in the Del Rio Sector."  Howard Decl. I, Ex. C, at 7.  Because the DHS Defendants'

searches, processing, and productions are not complete, Plaintiffs' partial motion for summary

judgment is premature.  *See American Chemistry Council, Inc. v. HHS*, 953 F. Supp. 2d 120, 121

(D.D.C. 2013) (noting prior order holding that it was "premature to rule on the adequacy of

Defendants' search before they had submitted supporting declarations detailing their efforts").

As the DHS Defendants' opening brief explained, Plaintiffs are free to challenge the

adequacy of the agencies' searches *after* the agencies have produced non-exempt portions of

responsive e-mail communications.  *See* Defs' Br. at 19.  Indeed, all of the cases cited by Plaintiffs in support of their demand for an order directing the DHS Defendants to conduct searches using their preferred search terms, *see* Pls.' Br. at 21, were litigated on summary judgment after the defendant agencies had completed their searches and produced responsive records.  *See Brennan Ctr. for Justice*, 377 F. Supp. 3d at 432–434 (ruling on adequacy of search based on agency's sworn declarations detailing the completed searches that had been performed); *Immigrant Defense Project v. DHS*, No. 20 Civ. 10625 (RA), 2023 WL 1966178, at \*1, 3–6 (S.D.N.Y. Feb. 13, 2023) (ruling on adequacy of search after agencies completed searches, released responsive records, and submitted sworn declarations detailing the completed searches that had been performed); *NAACP Legal Defense & Educ. Fund, Inc. v. Dep't of Justice*, 463 F. Supp. 3d 474, 479–482, 485–89 (S.D.N.Y. 2020) (same); *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't Agency*, 877 F. Supp. 2d 87, 94–95  (S.D.N.Y. 2012) (same); *Fox News Network, LLC v. U.S. Dep't of the Treasury*, 678 F. Supp. 2d 162, 165–166 (S.D.N.Y. 2009) (same).  The Court should therefore deny Plaintiffs' request for an order compelling the DHS Defendants to conduct searches of relevant e-mail communications using Plaintiffs' selected search terms.

## C.    The Court Should Reject Plaintiffs' Demand that Each Agency Process 1,500 Records Per Month

The DHS Defendants have agreed to search for and process Plaintiffs' FOIA Requests, subject to the modifications in the DHS Defendants' motion for partial summary judgment and the May 2 Proposal.  In their cross-motion, Plaintiffs request that the Court impose an arbitrary production schedule of 1,500 pages per month upon the DHS Defendants, without addressing the relevant legal standards or considering what is practicable for the agencies.  CBP has agreed to process Plaintiffs' FOIA requests at a rate of 500 pages per month.  DHS-HQ has agreed to process 400 pages per month.  And ICE has agreed to process Plaintiffs' FOIA requests at a rate of 750

pages per month.  The DHS Defendants' proposed processing rates represent what the agencies have determined is practicable considering the limited resources available and the DHS Defendants' FOIA caseload.  The Court should therefore deny Plaintiffs' motion for an order directing an expedited schedule of 1,500 pages per month.

### 1.      Legal Standards

Plaintiffs' suggestion that agencies are required to fully process FOIA requests within a short period of time, Pls.' Br. at 22, is incorrect.  The statute provides that an agency that has received a FOIA request is required, as relevant here, to "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request."  5 U.S.C. § 552(a)(6)(A)(i).  FOIA's 20-working-day time period does not create a deadline for production.  *Citizens for Responsibility & Ethics in Washington v. FEC*, 711 F.3d 180, 189-90 (D.C. Cir. 2013) ("*CREW*").  Rather, "if the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court."  *Id.*  No other provision in FOIA creates a specific timeframe for the release of records.  *See* 5 U.S.C. §§ 552(a)(3)(A) (an agency shall make records responsive to a proper request "promptly available"), (a)(6)(C)(i) (same for litigated cases).  Moreover, for complex requests like Plaintiffs' requests, it takes agencies significantly longer to process such requests as they have multiple parts and sub-parts and request different types of records across various components.  *See* Second Declaration of Patrick Howard, dated Oct. 13, 2023 ("Howard Decl. II") ¶¶ 14–15; Second Declaration of Fernando Pineiro, dated Oct. 13, 2023 ("Pineiro Decl. II") ¶¶ 16–17; Second Declaration of Catrina Pavlik-Keenan, dated Oct. 13, 2023 ("Pavlik-Keenan Decl. II") ¶ 12.  And because of the complexity of Plaintiffs' requests and the overbreadth and vagueness of the October 2021 Request, it took many months to negotiate with Plaintiffs to narrow the request such that the DHS Defendants could process the

request, as set forth in the May 2 Proposal and modified in the DHS Defendants' moving brief. Howard Decl. II ¶ 18; Pineiro Decl. II ¶ 17; Pavlik-Keenan Decl. II ¶¶ 12, 15.

FOIA does permit certain requests to be prioritized above others; this is referred to as "expedited processing." 5 U.S.C. § 552(a)(6)(E). To qualify for expedited processing, a requester must show either a "compelling need" (a term defined by the statute) or other criteria an agency provides for by regulation. *See* 5 U.S.C. § 552(a)(6)(E)(i). But, as explained in the legislative history to the 1996 FOIA amendments that created FOIA's expedited processing provision, "[n]o specific number of days for compliance is imposed by the bill, since, depending on the complexity of the request, the time needed for compliance may vary." S. Rep. No. 104–272, at 17 (1996). Even for requests as to which expedited processing is granted, "[t]he goal is not to get the request . . . processed within a specific time frame, but to give the request priority for processing more quickly than otherwise would occur." *Id.* Thus, even in cases where a FOIA request is entitled to expedited processing, "[t]he statute does not assign any particular time frame to release of the records sought." *Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270, 275 (D.D.C. 2012); *see also* 5 U.S.C. § 552(a)(6)(E)(iii); *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 296 (D.D.C. 2013) ("the only relief required by the FOIA with regard to expedited processing is moving an individual's request 'to the front of the agency's processing queue'").

To qualify for expedited processing, a requester must show a "compelling need." The statute defines two categories of "compelling need": the requester must show either that failure to obtain the records on an expedited basis could reasonably be expected to pose an imminent threat to an individual's life or physical safety, 5 U.S.C. § 552(a)(6)(E)(v)(I); or, if the requester is "a person primarily engaged in disseminating information," it may show "urgency to inform the

public concerning actual or alleged Federal Government activity," *id*. § 552(a)(6)(E)(v)(II).[2] Following Congress's explicit guidance when it passed the 1996 amendments providing for expedited processing, courts have interpreted this "urgency" requirement narrowly.  *See Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001) (citing H.R. Rep. No. 104–795, at 26 (1996)).  As Congress and the courts have both recognized, if all requests were entitled to expedited processing, then prioritization would be meaningless.  *See id*.

To determine whether a request should qualify for expedited processing under the statutory criteria, courts consider:  "(1) 'whether the request concerns a matter of exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity.'" *Bloomberg L.P. v. FDA*, 500 F. Supp. 2d 371, 377 (S.D.N.Y. 2007) (quoting *Al-Fayed*, 254 F.3d at 310).  The requester must show urgency to inform the public on the specific subject matter of the FOIA request, not a more general topic under which the request falls.  *See, e.g.*, *Elec. Privacy Info. Ctr. v. Dep't of Def.*, 355 F. Supp. 2d 98, 101–02 (D.D.C. 2004) (requester had not shown entitlement to expedited processing by suggesting public interest in general topic of data mining, rather than the specific program to which the FOIA request related); *Allied Progress v. Consumer Fin. Prot. Bureau*, No. CV 17-686 (CKK), 2017 WL 1750263, at *6 (D.D.C. May 4, 2017) (denying expedited processing where "Plaintiff has not explained why the specific records sought via the FOIA Requests are crucial to the alleged public debate over the Prepaid Rule…"); *ACLU*

---

[2] In addition to the statutory criteria, DHS's regulations also provide for expedited processing for matters involving a "loss of substantial due process rights" or "widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."  6 C.F.R. § 5.5(e)(1).

*v. DOJ*, No. C 04-4447 (PJH), 2005 WL 588354, at *14 (N.D. Cal. Mar. 11, 2005) (reviewing cases).

Finally, even in cases where expedited processing is granted, the statute only requires that records be processed "as soon as practicable."  5 U.S.C. § 552(a)(6)(E)(iii).  The requirement that an agency process records as soon as practicable "does not impose on the agency any particular timeframe to release the records sought, but rather moves the plaintiff's request to the front of the agency's processing queue." *Documented NY v. U.S. Dep't of State*, No. 20-CV-1946 (AJN), 2021 WL 4226239, at *2 (S.D.N.Y. Sept. 16, 2021) (citing cases; citations, quotation marks, and alterations omitted).  Whether or not a proposed processing rate is "practicable" depends upon numerous factors, including "evidence of the agency's resource constraints, obligations to other FOIA requests, [and] whether the request implicates sensitive or confidential materials." *Id.*; *see also Middle E. Forum v. DHS*, 297 F. Supp. 3d 183, 185 (D.D.C. 2018) (500 page per month process rate appropriate); *Colbert v. FBI*, No. 16-CV-1790 (DLF), 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018) (considering "the size and compelling need of the request compared to others, as well as the effect of the request on the [agency's] ability to review other FOIA requests" and allowing agency to process at its standard rate); *Middle E. Forum*, 297 F. Supp. 3d at 185 (500 page per month process rate appropriate); *Elec. Privacy Info. Ctr. v. DOJ*, 15 F. Supp. 3d 32, 43 (D.D.C. 2014) (to determine what is "practicable," courts consider expedited FOIA requests the agency is already processing, the volume of requested materials, the demands of agency review, and competing obligations of the same agency staffers).

### 2.      Plaintiffs' FOIA Requests Are Not Entitled to Expedited Processing

Plaintiffs' FOIA requests meet none of the criteria to qualify for expedited processing, nor do Plaintiffs even set forth a basis as to why their requests would be entitled to expedited processing.  First, Plaintiffs have not shown that a failure to obtain the requested records "could

reasonably be expected to pose an imminent threat to the life or physical safety of an individual."

*Al-Fayed*, 254 F.3d at 310.   The incident for which Plaintiffs are seeking records took place

between September 1, and September 25, 2021.   *See* Pls. Br. at 4–5.   Plaintiffs have not put forth

any facts showing that there is any ongoing or imminent threat to life or safety implicated by their

FOIA requests.

Second, Plaintiffs do not qualify as "a person primarily engaged in disseminating

information" pursuant to 5 U.S.C. § 552(a)(6)(E)(v)(II).   None of the Plaintiff organizations are

media outlets nor is their primary purpose to disseminate information, according to their websites.

Plaintiff UndocuBlack Network is a "multigenerational network of currently and formerly

undocumented Black people that fosters community, facilitates access to resources, and

contributes to transforming the realities of our people . . ."   *See Undocublack Network*,

https://undocublack.org/asdasd (last visited Oct. 13, 2023).   Plaintiff Haitian Bridge Alliance is a

501(c)(3) non-profit organization that "advocates for fair and humane immigration policies and

connects migrants with humanitarian, legal, and social services . . ."   *See Haitian Bridge Alliance*,

https://haitianbridgealliance.org/about/ (last visited Oct. 13, 2023).   And Plaintiff African

Communities Together is an "organization of African immigrants fighting for civil rights,

opportunity, and a better life for . . . families . . . in the U.S. and worldwide."   *See African

Communities Together*, https://africans.us/what-we-do (last visited Oct. 13, 2023).   Accordingly,

Plaintiffs' FOIA requests are not eligible for expedited processing on the basis that the plaintiffs

are not a person primarily engaged in information dissemination.   *See Landmark Legal Found.*,

910 F. Supp. 2d at 275–76 ("[G]iven Congressional and D.C. Circuit direction that the category

be narrowly construed, this Court must be cautious in deeming non-media organizations as persons

primarily engaged in information dissemination.").

Even if Plaintiffs were deemed to be a person primarily engaged in disseminating information, they have still not shown an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). As Plaintiffs concede, the events that are subject to their FOIA request were publicly reported in and around the time of the incidents, which was over two years ago in September 2021, and therefore there is no particular urgency regarding the information. *See Al-Fayed*, 254 F.3d at 310 ("Although these topics may continue to be newsworthy, none of the events at issue is the subject of a currently unfolding story."). Moreover, CBP has since issued a report regarding the incident. FOIA processing is a limited resource, and directing resources to this request will mean that others—including the thousands of requests not in litigation—will be further delayed.

Finally, Plaintiffs are not eligible for expedited processing under DHS's FOIA regulations. Plaintiffs have not shown that they will suffer a "threatened loss of substantial due process rights"; they have not alleged any due process rights that would be affected by the receipt of these documents. *See Khan v. DHS*, No. CV 22-2480 (TJK), 2023 WL 6215359, at *6 (D.D.C. Sept. 25, 2023). Nor have Plaintiffs shown that this is a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 6 C.F.R. § 5.5(e)(1). One way to determine whether such "possible questions exist is by examining the state of public coverage of the matter at issue, and whether that coverage surfaces possible ethics issues so potentially significant to reduce public confidence in governmental institutions." *Oversight v. DOJ*, 292 F. Supp. 3d 501, 508 (D.D.C. 2018). Although Plaintiffs have pointed to news articles criticizing federal government action, those articles, which are from 2021 and 2022, do not rise to the level of showing "ethics issues so potentially significant as to reduce public confidence in governmental institutions." *Id*.

### 3.      Plaintiffs' Proposed Processing Rate Is Not Practicable

Even if Plaintiffs were entitled to expedited processing, the processing that they have requested is not "practicable."  5 U.S.C. § 552(a)(6)(E)(iii); *accord Brennan Ctr. v. DOJ*, 300 F. Supp. 3d 540, 548 (S.D.N.Y. 2018) (considering whether a proposed production schedule is "practicable").

As explained by the agency declarants, CBP, ICE, and DHS-HQ can commit to work in good faith to process (for responsiveness and exemptions) 500 pages, 750 pages, and 400 pages per month, respectively.  This is the same commitment each agency routinely makes in litigation cases.  *See* Howard Decl. II ¶¶ 36, 43; Pineiro Decl. II ¶ 23; Pavlik-Keenan Decl. II ¶¶ 16, 21.  The agencies' declarations are accorded a presumption of good faith on these points.  *See Middle E. Forum*, 297 F. Supp. 3d at 185.

Each of the DHS Defendants' declarations explains in detail why processing 1,500 pages per month is not practicable.  CBP explains that the complex nature of Plaintiffs' requests, along with CBP's limited resources and large number of FOIA cases, would make processing more than 500 pages not practicable.  *See* Howard Decl. II ¶¶ 27–29, 35, 37–38.  CBP anticipates that if it was required to process more than 500 pages per month, its FOIA division would have to "pull a large number of its staff members off of their current projects, which include processing and review of other litigations and administrative requests, to aid in the processing of this litigation." *Id.* ¶ 37. In addition, "CBP's FOIA processing resources are already under tremendous strain," and the "entry of demanding production orders has a direct and serious impact on CBP's overall FOIA program, resulting in an increased backlog." *Id.* ¶ 35.  Accordingly, a processing speed of 500 pages per month is practicable in light of resource constraints and so that other FOIA requesters do not suffer an unfair delay.  *Id.* ¶¶ 37–38, 43–44.

Similarly, ICE has approximately 32,191 open FOIA cases, including a backlog of over 29,000 FOIA requests.  Pineiro Decl. II ¶ 14.   An increasing number of those cases, like Plaintiffs', are complex in terms of both volume and substance, which means they take longer to process.  *Id.* ¶¶ 16–17.  As of September 2023, ICE is handling 161 active FOIA litigations, including 69 that have monthly rolling production schedules.  *Id.* ¶ 20.  If ICE were required to process more than 500 pages per month, ICE would have to divert resources to Plaintiffs' requests at the expense of other FOIA requests.  *See id.* ¶¶ 23, 26.  Because of resource constraints, and the complexity and volume of FOIA requests, it would not be practicable for ICE to process more than 750 pages per month in response to Plaintiffs' requests.  *Id.* ¶ 26.

The same is true for DHS-HQ.  If DHS-HQ were required to process 1,500 pages per month, it would create an "untenable burden" on DHS-HQ's limited resources and "would risk the inadvertent release of sensitive and FOIA-related information."  Pavlik-Keenan Decl. II ¶ 17.  In addition, if ordered to process 1,500 pages of records per month, DHS-HQ "would have to reallocate significant resources from other pending FOIA requests and FOIA litigations."  *Id.* ¶ 18.  Moreover, if DHS-HQ is required to process 1,500 pages per month in connection with Plaintiffs' requests, "based on its current personnel resources, it would likely be required to halt review for other litigation and consultations."  *Id.* ¶ 20.  Prioritizing Plaintiffs' requests over other requests that predate it would be unfair to other FOIA requesters.  *Id.*  Thus, it would not be practicable for DHS-HQ to process 1,500 pages per month without causing "major disruption" to the processing of other FOIA requests.  *Id.* ¶ 22.

By contrast, Plaintiffs offer no factual basis to conclude that 1,500 pages per month would be practicable.  They simply assert that their proposed rate is reasonable because, in their view, the documents are of an "urgent and high-profile nature," and cite one case where a court ordered

agencies to process records at a higher rate.  Pls.' Br. at 23 (citing *Open Soc'y Just. Initiative ("OSJI") v. CIA*, 399 F. Supp. 3d 161, 167 (S.D.N.Y. 2019)).  But the 5,000 pages per month rate ordered in *OSJI* was unusually high, as courts have recognized.  *See Documented NY,* 2021 WL 4226239, at *4 (describing the processing rate ordered in *OSJI* as "exceptionally high" and distinguishing the case as one of "paramount public importance and urgency") (internal quotation marks omitted).  The *OSJI* Court justified that extraordinary rate because, in the Court's view, the FOIA request seeking records relating to the killing of Jamal Khashoggi concerned "a matter of exceptional public importance and obvious and unusual time-sensitivity," calling for a "heightened commitment of resources."  399 F. Supp. 3d at 167.  That is not the case here.

In sum, the DHS Defendants reasonably expect enduring negative consequences for other requests if Plaintiffs' proposed rate is adopted.  Their declarants have explained that the rate proposed by Plaintiffs would cause further backlogs, overburden limited agency resources, and cause the agencies to unfairly allocate resources from other pending FOIA requests.  Even for requests entitled to expedited processing, a single FOIA requester should not be permitted to monopolize the agencies' limited resources.  *See Nat'l Sec. Counselors v. DOJ*, 848 F.3d 467, 471–72 (D.C. Cir. 2017) (approving FBI policy of processing individual FOIA requests in 500-page increments because this "provides more pages to more requesters, avoiding situations in which a few, large queue requests monopolize finite processing resources" (quotation marks omitted)).  Accordingly, the Court should reject Plaintiffs' proposed processing rates as impracticable and adopt the DHS Defendants' proposed processing rates.  *See Documented NY*, 2021 WL 4226239, at *4 (rejecting plaintiffs' proposed processing rates and finding processing rate of 400 pages per month to be practicable); *Middle E. Forum*, 297 F. Supp. 3d at 185 (rejecting

request to depart from agency's proposed 500 page monthly processing proposal based upon agency declarations).[3]

## CONCLUSION

For the foregoing reasons, the DHS Defendants respectfully request that the Court grant their motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, (i) limiting the October 2021 Request to the May 2 Proposal as subsequently modified by the DHS Defendants and (ii) allowing the DHS Defendants to exercise their discretion to craft reasonable searches for responsive records, deny Plaintiffs' cross-motion for partial summary judgment, and adopt the DHS Defendants' proposed processing rates of 500 pages, 750 pages, and 400 pages per month, respectively, for CBP, ICE, and DHS-HQ.

Dated:   October 13, 2023
       New York, New York

                                   DAMIAN WILLIAMS
                                   United States Attorney for the
                                   Southern District of New York

By:    */s/ Tomoko Onozawa*
                                     DANA WALSH KUMAR
                                   TOMOKO ONOZAWA
                                   Assistant United States Attorneys
                                   86 Chambers Street, 3rd Floor
                                   New York, New York 10007
                                   Tel.:   (212) 637-2741/2721
                                   Fax:   (212) 637-2686
                                   Email: dana.walsh.kumar@usdoj.gov
                                               tomoko.onozawa@usdoj.gov

---

[3] The Government does not oppose Plaintiffs' request that the parties submit status reports every two months.