UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAITIAN BRIDGE ALLIANCE, AFRICAN COMMUNITIES TOGETHER, and UNDOCUBLACK NETWORK, <br><br> Plaintiffs, <br><br> -v- <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, and FEDERAL BUREAU OF PRISONS, <br><br> Defendants. | 22 Civ. 8344 (ER) |

## SECOND DECLARATION BY PATRICK HOWARD

My name is Patrick Howard, and I am a Branch Chief within the Freedom of Information Act Division (FOIA Division) at U.S. Customs and Border Protection (CBP), Department of Homeland Security (DHS).

1. I submitted a declaration in support of CBP's partial motion for summary judgment, in which my background and duties are described. The statements in this Declaration are made on the basis of my personal knowledge of the internal operations of this office and agency and information acquired by me in the course of the performance of my official duties.

2. I make this supplemental declaration in support of the CBP's response to Plaintiffs' cross-motion for partial summary judgment, which specifically seeks a production schedule which would require CBP to process 1,500 pages per month.

3. CBP is a law enforcement agency comprised of more than 60,000 employees charged with enforcing hundreds of Federal statutes. Approximately 45,000 of those employees are armed law enforcement officers engaged in carrying out CBP's expansive border security mission (U.S. Border Patrol Agents, CBP Officers, and CBP Air and Marine Agents).

4. I am familiar with the procedures followed by CBP in responding to requests for information pursuant to the provisions of FOIA, and with the requests made by the Plaintiffs in the above-captioned matter.

5. Broadly, the FOIA Division at CBP reviews FOIA requests, determines whether

|     | |
| --- | --- |
|     | responsive records exist, and, if so, whether they can be released in accordance with the FOIA. In processing such requests, the FOIA Division consults with CBP personnel and, when appropriate, with other components in the Department of Homeland Security (DHS), as well as other Executive Branch agencies. |
| 6.  | Despite the large size of CBP as an organization, the FOIA Division currently consists of only twenty-eight (28) full-time Government Information Specialists (GIS), eleven (11) FOIA assistants and five (5) supervisory branch chiefs. None of these employees are attorneys. FOIA assistants mainly work on retrieving documents for and otherwise assisting with responses to simple FOIA requests for traveler information. Of the five (5) supervisory employees, only one (1) is assigned to oversee the Government Information Specialists assigned to FOIA litigation cases full time. |
| 7.  | A Government Information Specialist (GIS), sometimes referred to as a FOIA processor, is tasked with reviewing information and providing advice and assistance to managers and employees concerning FOIA issues, policies, and procedures. They are also responsible for processing FOIA requests for CBP records, a process that involves reviewing the content of records to determine the proper disclosure under FOIA. A GIS is responsible for reviewing and preparing draft responses to requests for releases of information, and in so doing, must apply any relevant statute, regulation, agency rule and/or executive order as they pertain to FOIA requests. Additionally, a GIS must ensure compliance with DHS regulations, Department of Justice policies, and other applicable laws. |
| 8.  | A Branch Chief in the FOIA Division is responsible for managing policy formulation, advising Agency management, and ensuring compliance with federal laws governing the flow of information. Branch Chiefs oversee the release of CBP documents and information, assist with FOIA litigation matters, and oversee the processing of FOIA responses and adherence to federal laws and regulations. |
| 9.  | The CBP FOIA Division has received more than 132,000 FOIA requests in each of the past two fiscal years. The FOIA requests are becoming increasingly more complex and voluminous. |
| 10. | The FOIA Division received 80,455 requests in fiscal year (FY) 2020, 108,299 requests in FY 2021, and 132,117 in FY 2022. The Fiscal Year runs from October 1 to September 30. Although in Fiscal Year 2022, FOIA closed 111,583 cases, the office still had 46,294 pending requests at the end of the Fiscal Year. As of September 2023, the FOIA Division has received 136,766 requests this fiscal year. Comparing FY2020 and year to date, the FOIA Division experienced more than an 80% increase in the number of FOIA requests received. Since becoming Branch Chief for the FOIA Division, I could not have anticipated such a dramatic increase in the number of FOIA requests received. Currently, the FOIA Division has a backlog of approximately 26,500 requests, including complex requests. |
| 11. | The continued high number of FOIA requests submitted to the Agency has kept |

        the FOIA Division under considerable stress, as its limited FOIA processing staff and resources struggle to keep up with this workload.

12. In general, after receiving a FOIA request, CBP's standard practice is as follows: the FOIA Division reviews the FOIA request; determines if the FOIA request reasonably describes the records requested and complies with applicable agency rules and procedures; determines if responsive records exist, often by reaching out to CBP offices and personnel; facilitates a search for potentially responsive records; and determines whether records from a search are responsive to the FOIA request and/or should be partially redacted or withheld under any one of FOIA's nine statutory exemptions.

13. The FOIA Division divides FOIA requests into two categories: simple and complex. A simple request—also referred to as a traveler request—is one where a member of the traveling public requests records related to his or her travel. Generally, these records are housed in accessible databases that can be swiftly searched, and require routine, minimal redactions due to their display format.

14. Complex FOIA requests—also referred to as non-traveler requests—are all other types of FOIA requests received. Examples of complex requests include requests from businesses for import and export records, requests for information related to an Executive Order, and requests from media sources or special interest groups focused on a variety of matters not specific to an individual traveler.

15. For complex FOIA requests, the FOIA Division must determine which CBP offices are likely to have responsive information. The FOIA Division then works with those offices to determine which custodians are likely to have responsive records. In most cases, the FOIA Division works directly with the custodian to gather electronic records and hard copy (paper) records. This is often because many records are not centrally located and/or retrievable by the FOIA Division. Rather, they must be collected by different offices or custodians and then sent to the FOIA Division for review. Additionally, in my experience, individual offices may have different ways of storing their records, or particular search terms may be better suited for one office over another based on the type of work they do or documents they maintain. Consequently, the FOIA Division often confers with an office or custodian to execute a search based on the language of the FOIA request and the way an office or custodian maintains potentially responsive records. Sometimes, based on the facts of a situation or records at issue, it makes sense to craft different searches among different offices or custodians.

16. Based upon my experience, in a typical fiscal year, approximately 85% of the total volume of FOIA requests will be simple requests and 15% of the total volume will be complex requests.

3

17. CBP policy for processing FOIA requests is generally done on a first-in, first-out (FIFO) basis. Simple, or traveler requests, are processed on a FIFO basis among other simple requests. Complex, or non-traveler requests, are generally processed on a FIFO basis among other complex requests.

18. Plaintiff's FOIA requests are complex. Plaintiffs' requests contained many subparts and were extremely broad. Plaintiffs' October 2021 Request did not reasonably describe the records sought. It took months of negotiation with Plaintiffs to narrow the requests such that CBP could process the requests. The negotiations culminated in the May 2 Proposal, as further modified.

19. Once CBP has completed its search and located potentially responsive records, it must process them for release. Processing records requires: (1) reviewing records for responsiveness to the request, and (2) reviewing responsive records to excise and withhold information that falls within any one of the FOIA's nine statutory exemptions from disclosure. See 5 U.S.C. § 552(b). Additionally, if another federal agency has an equity interest in a responsive record, the FOIA processor must consult with that agency to determine whether the record is releasable.

20. In processing FOIA requests, a FOIA processor reviews all potentially responsive records to determine whether each record is responsive to the request. Records that are deemed clearly non-responsive or duplicative are segregated from records requiring a detailed line-by-line review for responsiveness. In order to review responsive records for information exempt from disclosure, a CBP FOIA processor must (1) meticulously examine, line-by-line, each responsive page to identify potential redactions, (2) apply redactions (if necessary), and (3) individually label each redaction (which could be a name, email address or phone number, a single word or phrase, or substantial portions of a document), with the applicable exemption or exemptions. All records reviewed by the FOIA processor then undergo a final supervisory review to ensure accuracy. The final review confirms whether documents are non-responsive, duplicative, or responsive. It further confirms that any exemptions claimed are appropriate and that redactions are limited to only the portions of the record to which the exemption applies.

21. Where records potentially implicate the equities of another agency or component of DHS, CBP is required to consult with that agency or component before such records are released. Once CBP sends records for such a consultation, the response time is not within the control of CBP.

22. CBP's processing policies are designed to most equitably provide the largest number of requesters the largest amount of information possible. Following CBP's established policies for processing FOIA requests allows CBP to efficiently utilize its limited resources and maintain information security while closing approximately 5,600 FOIA requests per month.

23. In October 2021, Plaintiffs submitted to CBP a FOIA request regarding DHS operations in the Del Rio sector in September 2021 (the "October 2021 Request").

Case 1:22-cv-08344-ER  Document 72  Filed 10/13/23  Page 5 of 7

On October 1, 2021, CBP acknowledged receipt of the October 2021 Request via electronic mail, and assigned it request number CBP-2022-000314.

24. The FOIA Division has processed Request No. 3 of the October 2021 Request.

25. On February 25, 2022, Plaintiffs sent a second FOIA request (the "February 2022 Request") to CBP, seeking records concerning any investigations related to the treatment of individuals in the Del Rio sector in September 2021. The CBP FOIA Division acknowledged receipt of the February 2022 Request. This request was assigned case number, CBP-IA-2022-047980.

26. CBP is currently processing the October 2021 FOIA Request, as narrowed in the May 2 Proposal and further modified as set forth in CBP's partial motion for summary judgment, and the February 2022 Request.

27. As I noted above, normally the vast majority (85%) of FOIA requests that CBP receives are simple requests that seek one or more of certain categories of travel records related to an individual. Those records generally require minimal redactions due to their display format, and they typically involve routine redactions.

28. The email records sought by Plaintiffs are substantially different from the types of records CBP routinely processes, and more extensive efforts to search, review and redact these records are required.

29. The complexity of the records at issue in the instant matter, which involve, among other things, email communications, policies and procedures, and formal memoranda and guidance, also require a correspondingly more extensive and complex review process. CBP is employing a multi-office review process to ensure that all information that must be protected from release is properly withheld, and that all information that can be released is provided to requestors. Each page that CBP produces, in this and other complex litigation, will be reviewed multiple times.

30. First, documents are uploaded into the processing system and divided into "batches" for review. A batch is then released and tasked to a first-level reviewer to review for responsiveness to the request and for application of initial, proposed redactions consistent with FOIA exemptions. Thereafter, an Agency attorney reviews the batch for accuracy.

31. Because Plaintiffs' FOIA request is in litigation, attorneys in the CBP Office of Chief Counsel are also involved. After the initial and secondary review by the FOIA Division, Office of Chief Counsel attorneys may conduct, or answer questions pertaining to, reviews for responsiveness and redactions for applicable FOIA exemptions. They may also assist with the identification of what, if any,

5

outside agency equities exist in potentially responsive records. The Agency currently has 128 FOIA cases in litigation.

32. No attorneys in the CBP Office of Chief Counsel are solely responsible for FOIA matters; rather, they all shoulder other responsibilities outside of the FOIA context. Therefore, these attorneys are unable to devote all of their time to this level of review.

33. In addition, agencies and individuals outside of CBP also may be involved in the review. For example, if outside agency equities are identified, CBP consults with the relevant agency or agencies to ensure appropriate FOIA exemptions are applied. Due to the nature of this litigation, CBP anticipates that the majority of responsive content will need to be reviewed by outside agency equities. Additionally, because this and other requests are in litigation, the CBP Office of Chief Counsel must coordinate its review with the DHS Office of General Counsel and litigation counsel from the Department of Justice.

34. Only after all of these multiple levels of review are completed are the non-exempt portions of responsive records provided to the FOIA Division to release, as appropriate, to Plaintiffs.

35. As the foregoing makes clear, there are significant differences between the records at issue in this case (and the nature of processing and review involved) and those that are typically sought in 85% of the FOIA requests submitted to CBP. Given the sheer number of FOIA requests seeking these and similar records, CBP's FOIA processing resources are already under tremendous strain. The entry of demanding production orders has a direct and serious impact on CBP's overall FOIA program, resulting in an increased backlog that raises the risk of additional litigation and, more importantly, prevents CBP from getting information to the people requesting it. Demanding production orders also take resources away from CBP's ability to process simple requests as well.

36. CBP's normal processing rate for cases in litigation is to process between 250 and 500 pages a month.

37. If CBP is ordered to process over 500 pages a month, the strain this will put on CBP's FOIA division will be immense. It is anticipated that the FOIA division would have to pull a large number of its staff members off of their current projects, which include processing and review of other litigations and administrative requests, to aid in the processing of this litigation. This will result in other FOIA requesters not receiving material related to their FOIA requests and potentially other litigation deadlines being missed. Missing other litigation deadlines and/or not processing administrative FOIA requests will only lead to more litigation and more aggressive court-ordered processing schedules.

38. In sum, based on the nature of Plaintiffs' request and the limitations on CBP's resources, as discussed above, I do not believe CBP could currently achieve a

    faster average processing schedule over 500 pages a month without diverting resources from and thereby unduly prejudicing other earlier-filed FOIA requests and FOIA requests that are subject to court-ordered processing schedules.

39. The large number of FOIA requests (beyond the normal extremely heavy workload), coupled with this complex request and the extensive litigation demands associated with it and other unrelated matters, have put unusually high burdens on the Agency's FOIA processing capabilities, both from a systems as well as a human-resource perspective.

40. When CBP is given a court-ordered processing schedule, the effect is to move that request ahead of earlier-filed requests, causing other filers to suffer a delay in the processing of their request.

41. Individual case-processing schedules like those entered in other FOIA cases lower CBP's overall processing rate.

42. CBP is now processing Plaintiffs' request at a rate of 500 page per month, which is as quickly as is practicable in light of the resource constraints described above.

43. A FOIA supervisor, in balancing all their duties and responsibilities, typically reviews an average of 500 pages of records per month for each case they oversee. Based on the staffing structure and volume of caseload within the division, FOIA specialists only have the capacity to process approximately 500 pages per month in order to manage all active litigation cases and regular FOIA requests both complex and general incoming requests for information that are assigned to them.

44. Accordingly, based on the complex nature of Plaintiffs' FOIA requests and the constraints on CBP's FOIA processing resources, CBP cannot practicably process more than 500 pages per month in this matter.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

*Patrick Howard*

Patrick Howard
Branch Chief, FOIA Division

Executed October 13, 2023