IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAITIAN BRIDGE ALLIANCE, AFRICAN COMMUNITIES TOGETHER, and UNDOCUBLACK NETWORK, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, and FEDERAL BUREAU OF PRISONS, <br><br> Defendants. | Case No. 22-cv-8344 (ER) |

**SECOND DECLARATION OF CATRINA PAVLIK-KEENAN**

I, Catrina M. Pavlik-Keenan, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Deputy Chief Freedom of Information Act ("FOIA") Officer for the Privacy Office of the U.S. Department of Homeland Security ("DHS" or the "Department"). I have held my current position since July 4, 2021. Prior to holding this position, I was the U.S. Immigration and Customs Enforcement FOIA Officer from December 18, 2006, until July 3, 2021. Prior to holding that position, I worked for approximately four years in the FOIA office at the Transportation Security Administration, first as a Supervisory FOIA Analyst, then as Deputy Director for two years, and finally as Director. Prior to holding that position, I worked for approximately nine years as a FOIA Analyst at the Department of Transportation, holding

positions at the Federal Highway Administration, Office of Pipeline Safety, and Office of the Secretary from 1993 to 2002. In total, I have 30 years of experience processing FOIA requests.

2. The Privacy Office enables the Department to accomplish its mission while enforcing privacy protections in all DHS activities. DHS systems, technology, forms, and programs that collect personally identifiable information or have a privacy impact are subject to the oversight of the Chief Privacy Officer and the requirements of federal data privacy and disclosure laws.

3. DHS's FOIA Division sits within the Department's Privacy Office. As the Deputy Chief FOIA Officer for the Privacy Office, I act as DHS's principal point of contact and agency representative on FOIA-related matters for DHS Headquarters ("DHS-HQ") and all the DHS components. My official duties and responsibilities include the implementation of consistent FOIA management across DHS in collaboration with DHS components. In accordance with this responsibility, I maintain expert knowledge of the DHS FOIA regulations and routinely provide regulatory and policy guidance, technical advice, and assistance across the Department on all FOIA-related matters.

4. Through the exercise of my official duties, I am familiar with DHS-HQ's receipt and handling of the FOIA requests submitted by the Plaintiffs in this lawsuit and the steps taken to respond to Plaintiffs' FOIA requests.

5. I make this declaration in support of the DHS-HQ office's response to Plaintiffs' cross motion for partial summary judgment which specifically seeks a production schedule which would require DHS-HQ to process 1,500 pages per month.

6. Under the leadership of the Chief Privacy Officer, the DHS Privacy Office is responsible for monitoring FOIA operations across the Department and recommending

adjustments to agency practices, policies, personnel, and funding as may be necessary to improve performance, providing FOIA-related training, and preparing the required annual reports on the Department's FOIA performance.

7. These responsibilities are carried out by the FOIA Division within the DHS Privacy Office to promote efficiency, effectiveness, and statutory compliance throughout the Department. The FOIA Division is comprised of three teams: 1) Disclosure; 2) FOIA Appeals and Litigation; and 3) FOIA Policy, Compliance, and Training.

8. The DHS Privacy Office FOIA Division Disclosure team is responsible for receiving, tracking, processing, and closing all FOIA requests received by the DHS Privacy Office. The Disclosure team processes initial FOIA and Privacy Act (PA) requests made to the Office of the Secretary, the Management Directorate, the Office of the General Counsel, the Office of Public Engagement, and numerous other offices. This team is also responsible for engaging with the Components on the proper handling and processing of all FOIA transfers and referrals to the DHS Privacy Office. Further, the DHS Privacy Office also coordinates FOIA responses across DHS components when the requests involve cross-cutting issues involving multiple components and DHS HQ.

9. Of most relevance to this litigation, the DHS Privacy Office FOIA Appeals and Litigation Team (DHS FOIA Litigation Team) serves as liaison between the Office of the General Counsel (OGC) and the DHS Privacy Office leadership on complex FOIA requests. In addition, the team provides guidance and training on recent developments in the field of disclosure, to include court decisions and current legislation. The team also researches, analyzes, and evaluates complex FOIA requests to determine whether the FOIA or the Privacy Act (PA) was properly applied during the original processing of a FOIA request.

10. FOIA specialists handle all aspects of the FOIA request process. They receive new FOIA requests, along with referrals and consultation requests from other agencies or DHS components, log those new FOIA requests into the FOIA case tracking system, and send out search taskers to various offices compelling them to search for records. Once those searches are complete, FOIA specialists review any records located and make withholding determinations, redacting any exempt information pursuant to applicable FOIA exemptions. FOIA specialists also send out FOIA responses and work on other FOIA projects for the DHS Privacy Office, as needed.

11. In FY 2022, the DHS Privacy Office received 74,698 requests, a 39.8 percent increase compared to FY 2021, and processed 73,262 requests, a 2.3 percent increase compared to FY 2021. Despite the increase in FOIA requests and resource constraints, the DHS Privacy Office continues to make good faith efforts and exercises due diligence in processing requests on a first-in, first-out basis. As a result of these efforts, the DHS Privacy Office's backlog has been lowered to 576 requests, but which is still a 28 percent increase compared to FY 2021. Were it not for these efforts, the backlog would be considerably higher.

12. About 98 percent of the requests received by the DHS Privacy Office are categorized as complex requests, meaning that they require a wide-ranging search, frequently across multiple offices, and involve a large number of records. Plaintiffs' FOIA requests are also considered complex requests, based on the subject matter of the requests, the breadth of the requests, and a search across multiple offices that will likely return a large number of records. Plaintiffs' requests are particularly complex insofar as portions are vague and overbroad, and have required months to narrow the requests sufficiently to be able to conduct searches.

13. The DHS Privacy Office is currently involved in over 140 active lawsuits, 50 of which were filed in FY 2023. In FY 2023, the DHS Privacy Office reviewed 69,820 pages and

released 36,257 pages in its processing for litigation. Analysts on the DHS FOIA Litigation Team also reviewed 73,416 pages of Component litigation releases in FY 2023.

14. In addition to processing records for various litigation releases, members of the DHS FOIA Litigation Team also assist agency counsel in preparing Answers upon receipt of new Complaints, constantly provide updates and edits to periodic Joint Status Reports that are required in many of the FOIA litigations, provide information in support of declarations that are filed in FOIA litigation, and create the template for Vaughn indices. The team also has duties that do not relate directly to litigation, such as logging-in, acknowledging, and transferring all administrative appeals of FOIA responses to the U.S. Coast Guard administrative law judges who adjudicate DHS HQ FOIA appeals. Litigation team members also are frequently called upon to train new employees and assist with highly complex FOIA requests outside of litigation.

15. DHS-HQ at this stage in this litigation has agreed to conduct a reasonable search for records as set forth in the May 2 Proposal, as modified, and in response to Plaintiffs' February 2022 FOIA request. The DHS FOIA Litigation Team is in the process of determining which search terms and connectors will lead to potentially responsive records without being over or under inclusive. Once reasonable searches have identified potentially responsive records, the DHS FOIA Litigation Team will begin processing such search results and will review 400 pages per month. DHS-HQ has already released 462 pages of records responsive to Plaintiffs' requests, and also provided a large tranche of previously released documents, relevant to this case, for Plaintiff's review.

16. The DHS FOIA Office's standard review rate for one litigation case in production, based on workload and staffing described above, is 250-400 pages per month, with some slightly lower or higher as appropriate.

17. Requiring the DHS Privacy Office to process 1,500 pages of records per month, as proposed by Plaintiffs, would create an untenable burden on the DHS Privacy Office's limited resources and would risk the inadvertent release of sensitive and FOIA-exempt information.

18. If ordered to process 1,500 pages of records per month, the DHS Privacy Office would have to reallocate significant resources from other pending FOIA requests and FOIA litigations. This would mean possibly halting review for other active litigation productions and litigation consultations. Additionally, the DHS Privacy Office would possibly be forced to consider diverting office resources to dedicate them to assisting with Plaintiffs' request. Such a change would inevitably have a negative effect on the DHS Privacy Office's FOIA litigation processing and FOIA backlog, to the disadvantage of other members of the public seeking information through the FOIA process. It may also strain the resources of the DHS Privacy Office to a degree that the DHS Privacy Office would be in jeopardy of not meeting its present obligations to other courts.

19. Furthermore, processing 1,500 pages of records per month would hinder the DHS Privacy Office's ability to conduct the intra-agency and inter-agency reviews that I expect may be necessary for some records potentially responsive to Plaintiff's requests.

20. For all the Privacy Office's litigation cases that are currently in production, the Privacy Office generally has a combined total review rate of more than 3,800 pages a month, which may fluctuate every month. If the Privacy Office is required to process 1,500 pages a month for this request only, based on its current personnel resources, it would likely be required to halt review for other litigation and consultations. The DHS Privacy Office cannot prioritize the search and production of records associated with Plaintiffs' requests over other requests that predate it. Such a change would be unfair to other FOIA requestors and impede other FOIA cases. Plaintiffs'

requested processing rate of 1,500 pages per month therefore is not practicable without causing major disruptions to the processing of other FOIA requests.

21.     The DHS Privacy Office's processing rate of between 250-400 for litigation records pages capitalizes on its workflow and ensures that more pages for more requests are processed per month. Limiting the number of pages reviewed for each litigation case allows for more efficient processing for all DHS FOIA requests. This is particularly true in light of the demands posed by the growing number, size, and complexity of FOIA requests received by the Privacy Office. As previously stated, implementing an extreme page review requirement for one litigation case would likely mean diverting resources from both the DHS FOIA Litigation Team and the Disclosure Team. This would create delays in processing other requests and consulting with other agencies, creating a bottleneck effect. Any large page review requirement, even one not as large as the one requested by Plaintiffs, would stress the DHS Privacy Office's operations, create serious consequences for other requesters, and create delay or other complications.

22.     Based on the nature of Plaintiffs' requests and the limitations on DHS Privacy Office's resources, it would not be practicable for DHS-HQ to process 1,500 pages per month without causing major disruption to the processing of other FOIA requests.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Signed this 13th day of October 2023.

CATRINA M PAVLIK KEENAN
Digitally signed by CATRINA M PAVLIK KEENAN
Date: 2023.10.13 14:22:56 -04'00'

Catrina M. Pavlik-Keenan
Deputy Chief FOIA Officer
Privacy Office
U.S. Department of Homeland Security