**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HAITIAN BRIDGE ALLIANCE, AFRICAN COMMUNITIES TOGETHER, and UNDOCUBLACK NETWORK,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, and FEDERAL BUREAU OF PRISONS,<br><br>Defendants. | No. 22 Civ. 8344 (ER) |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF PLAINTIFFS' CROSS-MOTION**
**FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I.  THE COURT SHOULD ORDER DEFENDANTS TO RESPOND TO REQUESTS 6 AND 7.......................................................................................................1

II. THE COURT SHOULD ORDER DEFENDANTS TO USE PLAINTIFFS' PROPOSED SEARCH TERMS. ........................................................................................5

III. THE COURT SHOULD IMPOSE A REASONABLE PROCESSING SCHEDULE.......................................................................................................................6

CONCLUSION................................................................................................................................10

**TABLE OF AUTHORITIES**

**CASES**

*ACLU v. Dep't of Justice*, No. C 04-4447 (PJH), 2005 WL 588354 (N.D. Cal. Mar. 11, 2005)...................................................................................................................7

*Al-Fayed v. CIA*, 254 F.3d 300 (D.C. Cir. 2001)................................................................................7

*Allied Progress v. Consumer Fin. Prot. Bureau*, No. CV 17-686 (CKK), 2017 WL 1750263 (D.D.C. May 4, 2017).....................................................................................7

*Bloomberg L.P. v. FDA*, 500 F. Supp. 2d 371 (S.D.N.Y. 2007).........................................................7

*Brennan Ctr. for Just. at New York Univ. Sch. of L. v. Dep't of Just.*, 377 F. Supp. 3d 428 (S.D.N.Y. 2019)...........................................................................................6

*Carney v. Dep't of Justice*, 19 F.3d 807 (2d Cir. 1994)....................................................................2

*Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180 (D.C. Cir. 2013).............................................................................................6

*Det. Watch Network v. ICE*, No. 14-Civ.-00583 (S.D.N.Y. July 3, 2014), ECF No. 48............................................................................................................................9

*Documented NY v. Dep't of State*, 2021 WL 4226239 (S.D.N.Y. Sept. 16, 2021).....................................................................................................................................8

*Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27 (D.D.C. 2016).....................................................................................................................................9

*Elec. Priv. Info. Ctr. v. Dep't of Def.*, 355 F. Supp. 2d 98 (D.D.C. 2004).......................................7

*Fiduccia v. Dep't of Justice*, 185 F.3d 1035 (9th Cir. 1999)..........................................................10

*Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473 (2d Cir. 1999)...................................................2

*Immigrant Def. Project v. U.S. Dep't of Homeland Sec.*, 2023 WL 1966178 (S.D.N.Y. Feb. 13, 2023)..................................................................................................1

*Informed Consent Action Network v. U.S. Food & Drug Admin.*, 2022 WL 902083 (S.D.N.Y. Mar. 28, 2022).......................................................................................4

*Knight First Amend. Inst. at Columbia Univ. v. Ctrs. for Disease Control & Prevention*, 560 F. Supp. 3d 810 (S.D.N.Y. 2021)..............................................................2, 3

*LaCedra v. Exec. Off. for U.S. Att'ys*, 317 F.3d 345 (D.C. Cir. 2003).............................................4

*Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270 (D.D.C. 2012)..............................................7

*Long v. Off. of Pers. Mgmt.*, 692 F.3d 185 (2d Cir. 2012).....................................................................1

*Middle E. Forum v. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183 (D.D.C. 2018) ...............................................................................................................................8

*Muttitt v. Dep't of State*, 926 F. Supp. 2d 284 (D.D.C. 2013) ..........................................................7

*Nat'l Sec. Couns. v. Dep't of Just.*, 848 F.3d 467 (D.C. Cir. 2017)...................................................8

*Nightingale v. U.S. Citizenship & Immigr. Servs.*, 507 F. Supp. 3d 1193 (N.D. Cal. 2020)..........................................................................................................9, 10

*Open Society Justice Initiative v. CIA*, 399 F. Supp. 3d 161 (S.D.N.Y. 2019)................................8

*Phillips v. Immigr. & Customs Enf't*, 385 F. Supp. 2d 296 (S.D.N.Y. 2005)..................................6

*Pub. Emps. for Env't Resp. v. Env't Prot. Agency*, 314 F. Supp. 3d 68 (D.D.C. 2018) ................................................................................................................2, 4

*Rizzo v. Tyler*, 438 F. Supp. 895 (S.D.N.Y. 1977)........................................................................3

*Seavey v. Dep't of Just.*, 266 F. Supp. 3d 241 (D.D.C. 2017) .....................................................7, 8

*Seife v. Dep't of State*, 298 F. Supp. 3d 592 (S.D.N.Y. 2018).......................................................2

## OTHER AUTHORITIES

5 U.S.C. § 552................................................................................................................1, 3, 6, 7

*Freedom of Information Act Guidelines*, Dep't of Justice 3 (March 15, 2022), https://www.justice.gov/media/1212566/dl?inline ................................................................10

"FOIA was enacted to promote honest and open government." *Long v. Off. of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012) (quotation marks omitted). It is for that reason that the law "strongly favors a policy of disclosure," *Immigrant Def. Project v. U.S. Dep't of Homeland Sec.*, 2023 WL 1966178, at *2 (S.D.N.Y. Feb. 13, 2023) (quotation marks omitted), and a "court is to resolve all doubts in favor of disclosure," *Long*, 692 F.3d at 190. Not only do Defendants fail to acknowledge this well-settled principle, but their arguments contending that Plaintiffs are not entitled to important categories of documents, to the use of plainly relevant search terms, and to the processing of their requests in a timely manner run directly contrary to it.

In their opposition brief, Defendants do not dispute the facts set forth by Plaintiffs in their cross-motion for summary judgment. Defendants do not address key arguments raised by Plaintiffs. And they do not take issue with key authorities cited by Plaintiffs. Instead, Defendants principally rely on agency declarations for claims that are not entitled to deference and otherwise merely repeat misguided assertions from their opening brief that Plaintiffs already have refuted. On each of the issues in dispute, the Court should grant Plaintiffs' partial motion for summary judgment and deny Defendants' partial motion for summary judgment.

**I.  THE COURT SHOULD ORDER DEFENDANTS TO RESPOND TO REQUESTS 6 AND 7.**

As explained in Plaintiffs' opening brief, ECF No. 67 ("Pls.' Br."), Requests 6 and 7 meet FOIA's requirement that they "reasonably describe[ ]" the records they seek. 5 U.S.C. § 552(a)(3)(A). The requests are not vague, overbroad, or duplicative. *See* Pls.' Br. at 11–19. The Court should order Defendants to respond to Requests 6 and 7.

The Government's opposition brief, ECF No. 70 ("Gov't Opp."), is premised on the mistaken assertion that deference is due to self-serving declarations by agency employees interpreting the plain language of the requests. *See* Gov't Opp. at 3–8. But where parties dispute

1

the interpretation of FOIA requests, courts regularly determine for themselves whether the text of a request is vague or overbroad. In *Public Employees for Environmental Responsibility*, for example, the court examined the text of the plaintiff's request, concluding that the government's interpretation "strays far afield from the actual text of both parts of the FOIA request." *Pub. Emps. for Env't Resp. v. Env't Prot. Agency*, 314 F. Supp. 3d 68, 75–80 (D.D.C. 2018). It reached its conclusion without any reference to an agency declaration that had claimed that the request did not comply with FOIA's requirements. *See id.*; *Pub. Emps. for Env't Resp.*, 1:17-cv-00652-BAH (Nov. 9, 2017), ECF No. 13-5 at ¶ 9 (agency declaration). Courts in this District regularly do the same. *See, e.g.*, *Seife v. Dep't of State*, 298 F. Supp. 3d 592, 609 (S.D.N.Y. 2018) (interpreting text of FOIA request without relying on agency declaration); *Knight First Amend. Inst. at Columbia Univ. v. Ctrs. for Disease Control & Prevention*, 560 F. Supp. 3d 810, 821–23 (S.D.N.Y. 2021) (reaching interpretations of requests contrary to the agency's).

Defendants assert that their declarations "are entitled to a presumption of good faith" and are sufficient to carry their burden, Gov't Opp. at 3, yet they cite only cases in which courts relied on the *factual* assertions in agency declarations, where *the facts* were uniquely known by the agencies—not, as here, agencies' interpretations of requests. The Government's lead case, *see id.*, illustrates the point. There, the question at issue was the adequacy of the agency's search for responsive records, and the agency's affidavits described the steps the agency took in its search. *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999).[1] By contrast, the parties in this case dispute the "plain reading" of the text of the requests. *See* Pineiro Decl., ECF No. 61, ¶¶ 29–34, 37; Howard Decl., ECF No. 62, ¶¶ 25–30, 33; Pavlik-Keenan Decl., ECF No. 63, ¶¶ 27,

---

[1] Similarly, in *Carney*, the agency declarations described the searches conducted in the agencies and the nature of the documents that were withheld under FOIA exemptions. *Carney v. Dep't of Justice*, 19 F.3d 807, 813 (2d Cir. 1994).

2

30. That plain reading requires no specialized knowledge of facts; the Court can interpret the text. Therefore, the agencies' declarations on the point are not entitled to deference.

After all, FOIA requires that the Court engage in *de novo* review of agency decisions. 5 U.S.C. § 552(a)(4)(B). This *de novo* review "reflects Congress's intent to provide greater judicial scrutiny over an agency's FOIA determinations than over other agency rulings." *Rizzo v. Tyler*, 438 F. Supp. 895, 899 (S.D.N.Y. 1977). If such *de novo* review means anything, it means that where the agency and a court are equally capable of interpreting a request, the court must conduct its own interpretation rather than rely on the agency's interpretation.

Besides asserting reliance on the declarations, the Government's opposition otherwise repeats the same misguided interpretations of the requests that it presented in its opening brief and that Plaintiffs already refuted in their brief. As Plaintiffs emphasized before, agencies are "bound to read the request as drafted, not as agency officials might wish it was drafted." *Knight First Amend. Inst. at Columbia Univ.*, 560 F. Supp. 3d at 821 (quoting *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984)) (cleaned up). Yet the Government again claims, among other things, that Request 6 "would necessitate a search and review of all employee communications" on migrant requests for food. Gov't Opp. at 4–5. This is refuted in Plaintiffs' brief and by the plain language of the request. Pls.' Br. at 12–14; Pls.' Ex. G, ECF No. 68-7 (Plaintiffs' April 19, 2023 Proposal) at 9–10. The request seeks only "[r]ecords reflecting" the "total number of requests made by Migrants" in a specified period for food and other items. Request 6(a). The plain text of Request 6(a), like the rest of Requests 6 and 7, is narrowly drawn and clearly stated—well within the requirements of FOIA. *See* Pls.' Br. at 12–14.

The Government's opposition, moreover, fails to address the authorities that Plaintiffs cite for the well-established proposition that agencies may not read FOIA requests in ways that conflict

3

with the text of the requests. Pls.' Br. at 13–16; *see, e.g.*, *Pub. Emps. for Env't Resp.*, 314 F. Supp. 3d at 79 (disapproving of agency "construing . . . the FOIA request far more broadly than the text supports"). Instead, agencies must interpret a request "in favor of disclosure." *LaCedra v. Exec. Off. for U.S. Att'ys*, 317 F.3d 345, 348 (D.C. Cir. 2003).

Additionally, contrary to the Government's claim, Request 7 is not duplicative. The Government claims that Requests 1 through 5, which it has agreed to search for, seek "much of" the same information. Gov't Opp. at 7. With the use of the language "much of," even the Government acknowledges that there are records sought in Request 7 that are not covered by the prior requests. In particular, the Government points to other requests seeking "policies, procedures, directives and formal guidance" pertaining to agency actions, *id.*—but that language only highlights the differences between the other requests and Request 7. Request 7 seeks records about what actually happened at Del Rio, during defined periods of time, not agency policies or procedures. Pls.' Ex. G, ECF No. 68-7 (Plaintiffs' April 19, 2023 Proposal) at 10. It seeks records reflecting, for example, the actual use of horse patrols in Del Rio, Request 7(b), and actual violence against migrants, Request 7(c). The records sought in Request 7 are, even by the Government's own admission, plainly different than those in Requests 1 through 5.

Ultimately, the Government's opposition only underscores that it is attempting to do exactly what it may not: wield the statute's requirement that a request be "reasonably describe[d]" as "a method of withholding records." *Informed Consent Action Network v. U.S. Food & Drug Admin.*, 2022 WL 902083, at *2 (S.D.N.Y. Mar. 28, 2022) ("The purpose of the [reasonably describes] requirement is to enable the agency to locate the records in question; it is 'not to be used as a method of withholding records.'" (quoting *Pub. Emps. for Env't Resp.*, 314 F. Supp. 3d at 74)). The Court should order the Government to respond to Requests 6 and 7.

4

## II. THE COURT SHOULD ORDER DEFENDANTS TO USE PLAINTIFFS' PROPOSED SEARCH TERMS.

The Government does not dispute that Plaintiffs' proposed search terms are relevant and reasonable. In fact, after filing its opposition, one Defendant, ICE, reversed course and agreed to conduct a search using the terms that Plaintiffs requested. *See* Linhorst Reply Decl. Ex. 1. The Court should order the remaining Defendants, DHS and CBP, to follow ICE's course and use the Plaintiffs' proposed search terms when they search the files of previously agreed-upon custodians.

The proposed search terms are reasonable, narrow, and crafted to pick up the records that Plaintiffs seek. Pls.' Mot. at 19–20. The terms are the result of months of negotiation between the parties and take into consideration concerns the Government raised during negotiations. The Government has not explained why the terms are inadequate or why its undisclosed alternative terms would be better—let alone informed the Court what its terms even are.

Indeed, the Government's emphasis on the "discretion" it believes it is owed in designing terms misses a key point: Plaintiffs have asked the Government to simply produce the documents that hit on Plaintiffs' search terms, without the need for the Government to conduct any further responsiveness review. Pls.' Ex. G, ECF No. 68-7, at 10–11; Pl. Br. at 20 n.25. The terms Plaintiffs specified identify the exact records that Plaintiffs seek. Additionally, the Government should be able to complete this request quickly, as any records that hit on the terms are responsive and therefore should be produced, unless an exemption applies. Even ICE ignores this point, insisting on a responsiveness review. *See* Ex. 1 at 1.

Further, the Government's opposition wholly ignores that the Government's plan for using undisclosed terms, whose reasonableness and relevance remain unknown, will only lengthen this dispute and needlessly waste Court resources. *See* Pl. Br. 21–22. Using the Plaintiffs' proposed terms now, rather than allowing the Government to try its undisclosed terms first, will eliminate

5

the need for yet more motion practice later as to whether the Government's undisclosed terms were adequate. It will ensure that Plaintiffs receive a sufficient response to their requests as soon as possible, rather than waiting untold additional months. Indeed, the Government does not dispute the fact that its proposed process is likely to delay final resolution of this case. Using the negotiated terms now will conserve judicial resources and far better achieve FOIA's requirement that agencies "promptly" produce non-exempt, responsive documents. 5 U.S.C. § 552(a)(3)(A).

The Court has the uncontested authority to order the Government to use the negotiated terms now. As Plaintiffs explained, "FOIA imposes no limits on courts' equitable powers in enforcing its terms." *Brennan Ctr. for Just. at New York Univ. Sch. of L. v. Dep't of Just.*, 377 F. Supp. 3d 428, 433 (S.D.N.Y. 2019). In particular, courts may exercise that authority with an eye toward achieving "judicial economy." *Phillips v. Immigr. & Customs Enf't*, 385 F. Supp. 2d 296, 301 (S.D.N.Y. 2005). The Government nowhere disputes that the Court possesses such authority or identifies any legal barrier to the exercise of that authority now to compel the use of Plaintiffs' proposed terms. The Court should order DHS and CBP to follow ICE's lead and use those terms.

### III. THE COURT SHOULD IMPOSE A REASONABLE PROCESSING SCHEDULE.

Finally, Plaintiffs are entitled by law to a timely response. FOIA requires that agencies decide whether to respond to a request within 20 days, and then produce the requested records "promptly"—a directive that "typically would mean within days or a few weeks" of the agency's decision to respond, "not months or years." *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013) (Kavanaugh, J.). Yet Plaintiffs already have been forced to wait more than a year and a half to obtain documents about events of uncontroverted public importance. The Government has claimed that its response could take "decades." Pls' Ex. I, ECF No. 68-9, at 9. And ICE's new agreement on search terms only further highlights the problem: The Government now discloses that ICE has identified about 30,000 pages of records.

6

Ex. 1. At ICE's preferred rate of 750 pages per month, *see* Gov't Opp. at 16, it will take *more than three years* to complete its response as to a single custodian. The Court should grant Plaintiffs' request to order each agency to process at least 1,500 pages per month.

Defendants' arguments to the contrary do not hold up to scrutiny. First, they are based principally on a red herring—the issue of "expedited processing," *see* Defs.' Opp. at 11–15, which is an administrative issue not relevant here. FOIA's expedited processing provision requires each agency to "promulgate regulations . . . providing for expedited processing" of certain requests, 5 U.S.C. § 552(a)(6)(E)(i), and it imposes a 10-day deadline for agencies to make a determination on such requests, 5 U.S.C. § 552(a)(6)(E)(ii). The provision concerns how *agencies* should treat expedited requests, not what *courts* should do once a request reaches litigation. Here, Plaintiffs are not seeking "expedited processing" at the agency level. The Defendants have already blown their deadlines, and now Plaintiffs are seeking a reasonable "remedy" from the Court. *See Seavey v. Dep't of Just.*, 266 F. Supp. 3d 241, 245 (D.D.C. 2017) ("In light of the FBI's failure to comply with FOIA, the sole remaining question is what remedy Professor Seavey is entitled to."). Yet all the cases Defendants cite regarding expedited process concern whether requesters were properly denied expedited processing at the agency level.[2] These cases are inapposite here, where Plaintiffs have faced lengthy delay and now simply seek a reasonable production schedule from the Court.

---

[2] *See Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270, 273 (D.D.C. 2012) (noting that plaintiff sought order "declaring that the EPA wrongfully denied Landmark's expedited processing request"); *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 292 (D.D.C. 2013) (plaintiff challenging agency's "denial of his request[ ] for . . . expedited processing"); *Al-Fayed v. CIA*, 254 F.3d 300, 302 (D.C. Cir. 2001) (analyzing "the standard of judicial review applicable to agency denials of expedited processing"); *Bloomberg L.P. v. FDA*, 500 F. Supp. 2d 371, 374 (S.D.N.Y. 2007) (plaintiff appealed "the FDA denial of expedited processing"); *Elec. Priv. Info. Ctr. v. Dep't of Def.*, 355 F. Supp. 2d 98, 101–02 (D.D.C. 2004) (plaintiff sought to compel agency to grant its request for expedited processing); *Allied Progress v. Consumer Fin. Prot. Bureau*, No. CV 17-686 (CKK), 2017 WL 1750263, at *1 (D.D.C. May 4, 2017) (same); *ACLU v. Dep't of Justice*, No. C 04-4447 (PJH), 2005 WL 588354, at *14 (N.D. Cal. Mar. 11, 2005) (same).

The Court has the authority to impose the processing schedule that Plaintiffs seek. After an agency misses its FOIA-imposed deadline and the requester files suit, "[t]he Court then has the authority to oversee and supervise the agency's progress in responding to the request," and "may use its equitable powers to require the agency to process documents according to a court-imposed timeline." *Id*. at 244 (quoting *Clemente v. Fed. Bureau of Investigation*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014)). In *Seavey*, the court rejected the FBI's proposed 500-page-per-month processing rate—which would have resulted in a processing timeline lasting well over a decade—and instead ordered the agency to process 2,850 pages per month. *Id*. at 248; *see also id*. at 246 (rejecting agency's rationale and explaining, "[i]n the name of reducing its own administrative headaches, the FBI's 500–page policy ensures that larger requests are subject to an interminable delay in being completed"). The Court should do the same here and order each agency to process 1,500 pages per month—a rate that is just over half what was ordered in *Seavey*.[3]

The cases the Government cites do not advance their claims. *See* Defs.' Opp. at 18–19. *National Security Counselors* concerned fees the FBI charged to requesters; the parties were not litigating the agency's processing rate. *See Nat'l Sec. Couns. v. Dep't of Just.*, 848 F.3d 467, 471–72 (D.C. Cir. 2017). Another case endorsed a 400-page monthly rate due to the ongoing disruptions caused by the COVID-19 pandemic, *Documented NY v. Dep't of State*, 2021 WL 4226239, at *5 (S.D.N.Y. Sept. 16, 2021), and the third case found a 500-page monthly rate to be reasonable where it would result in all documents being processed within seven months, *Middle E. Forum v. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183, 187 (D.D.C. 2018)—far from the three years or "decades" that the Government has envisioned here. By contrast, many courts have

---

[3] Likewise, it is far less than the "5,000 pages per month rate" ordered in *Open Society Justice Initiative v. CIA*, 399 F. Supp. 3d 161, 168 (S.D.N.Y. 2019), as the Government acknowledges. *See* Gov't Br. 17–18.

8

ordered higher processing rates to ensure agencies complete their responses within a reasonable time. *See Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 37 (D.D.C. 2016) (describing previous orders in which court required DHS "to fully review at least 2,000 document pages per month," a minimum later "reduced to 1,500"); *Det. Watch Network v. ICE*, No. 14-Civ.-00583 (S.D.N.Y. July 3, 2014), ECF No. 48 (ordering DHS to either "review a minimum of 4,000 pages of documents per month" or "produce a minimum of 1,500 pages" per month and ordering ICE to "produce a minimum of 1,200 pages of responsive documents per month").

Second, Defendants' assertion that it would not be "practicable" to comply with a 1,500-page processing rate, *see* Gov't Opp. at 16–19, does not absolve them of their statutory obligations, as other courts have held when confronted by similar arguments. "Although courts recognize that resources for FOIA compliance may be heavily taxed by the quantity and depth of FOIA requests . . . , that does not grant the agency carte blanche to repeatedly violate congressionally mandated deadlines." *Nightingale v. U.S. Citizenship & Immigr. Servs.*, 507 F. Supp. 3d 1193, 1198 (N.D. Cal. 2020) (quotation marks omitted).

Indeed, Defendants do not dispute that they *could* process Plaintiffs' requests at a rate of 1,500 pages per month. And agencies' claims of excessive burden as grounds to avoid a reasonable processing schedule are belied by past experience. For example, in *Nightingale*, the plaintiffs sought an order requiring ICE and USCIS to eliminate their backlog of tens of thousands of delayed FOIA requests for certain immigration files and, going forward, to respond to new requests for those files within FOIA's statutory deadlines. The government responded that "the Court should not require Defendants to perform the impossible," and that the "timeline simply [was] not workable." *Nightingale*, No. 3:19-cv-03512-WHO (Nov. 18, 2020), ECF No. 82 at 14, 15. Nevertheless, the court issued the order, requiring ICE to eliminate its backlog within 60 days and

9

to respond to new requests for immigration files within the FOIA deadlines.  In a status report 90 days later, ICE reported that, despite its prior claim of impossibility, it had completely eliminated its backlog and the government was responding to the vast majority of newly filed requests within the statutory period.  *Nightingale*, No. 3:19-cv-03512-WHO (March 17, 2021), ECF No. 97 at ¶¶ 3–4.

Absent a court order requiring a more reasonable processing rate, the Government has claimed—and did not back away from in its opposition brief—that it could take "decades" to complete its response.  Pls.' Br. at 22 (quoting Ex. I, ECF No. 68-9, at 9).  Such an extreme timeline undermines the entire promise of the FOIA statute and its commitment to "prompt" and open access to government records.  "Telling the requester 'You'll get the documents 15, or eight, years from now' amounts as a practical matter in most cases to saying 'regardless of whether you are entitled to the documents, we will not give them to you.'"  *Fiduccia v. Dep't of Justice*, 185 F.3d 1035, 1041 (9th Cir. 1999).  As Attorney General Merrick Garland recently recognized in a memorandum to the heads of all executive branch departments and agencies, "Timely disclosure of records is . . . essential to the core purpose of FOIA."[4]

Accordingly, the Court should order the agencies to each comply with a reasonable processing schedule of 1,500 pages per month.[5]

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' cross-motion for partial summary judgment and deny the Agencies' motion for partial summary judgment.

---

[4] Attorney General Merrick Garland, *Freedom of Information Act Guidelines*, Dep't of Justice 3 (March 15, 2022), https://www.justice.gov/media/1212566/dl?inline.

[5] The Government does not dispute that it should be subject to the requirement to submit progress reports every two months.  *See* Gov't Br. at 19 n.3.

| | |
|---|---|
| Dated: Oct. 27, 2023 | /s/ *Michael Linhorst* |
| | Stephen J. Fuzesi (Bar No. SF2000) |
| | Michael Linhorst (Bar No. 5600168) |
| | WILLIAMS & CONNOLLY LLP |
| | 680 Maine Avenue, SW |
| | Washington, DC 20024 |
| | Telephone: (202) 434-5000 |
| | Facsimile: (202) 434-5029 |
| | Email: sfuzesi@wc.com |
| |       mlinhorst@wc.com |
| | |
| | For Matters in New York: |
| | WILLIAMS & CONNOLLY LLP |
| | 650 Fifth Avenue |
| | Suite 1500 |
| | New York, NY 10019 |
| | |
| | Tess Hellgren (*pro hac vice*) |
| | INNOVATION LAW LAB |
| | 333 SW 5th Ave., Suite 200 |
| | Portland, OR 97204 |
| | Telephone: 503-922-3042 |
| | Facsimile: 503-882-0281 |
| | Email: tess@innovationlawlab.org |
| | |
| | Sarah T. Gillman (Bar No. SG 9273) |
| | Sarah E. Decker (Bar No. 5850763) |
| | ROBERT F. KENNEDY HUMAN RIGHTS |
| | 88 Pine Street |
| | New York, New York 10005 |
| | Telephone: 347-977-7457 |
| |    908-967-3245 |
| | Email: gillman@rfkhumanrights.org |
| |     decker@rfkhumanrights.org |
| | |
| | *Counsel for Plaintiffs* |